**In the Interest of K.A.R.**

**No. 14–03–00970–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 30, 2005.

tered in the underlying proceeding. *See* TEX. R.CIV.P. 3a & 21a.

H. Lynne Clarke, Houston, TX, for appellants.

Edwin J. Terry, Jr., Austin, Kathleen M. McCumber, League City, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

This appeal arises out of a post-divorce dispute between former spouses concerning their minor child. The ex-husband, who initially sued for modification of the divorce decree, ultimately non-suited his claims, but not before the ex-wife filed a counter-petition for modification and a motion for sanctions against both her ex-husband and his trial counsel. The trial court granted the ex-wife the relief she sought in her counter-petition as well as $13,000 in attorney's fees and expenses as a sanction against the ex-husband and his counsel. We hold that the trial court erred in awarding attorney's fees and expenses as child support and in awarding appellate fees not conditioned on the ex-wife's success on appeal. Therefore, we modify the trial court's judgment to delete the award of fees and expenses as child support and to make the award of appellate fees conditional on the ex-wife's success on appeal. As modified, we affirm the trial court's judgment.

## I. Factual and Procedural Background

In 1993, Kenneth L. Richardson[1] and appellee Lisa Richardson were divorced. The divorce decree appointed Lisa as sole managing conservator of their minor son, K.A.R., and Kenneth as possessory conservator of K.A.R. The decree ordered Kenneth to attend regular counseling sessions conducted by Jose Cardena. In 2002, after K.A.R. expressed an interest in living with his father, Kenneth filed a petition to modify the divorce decree to make Kenneth a joint managing conservator and to give him the exclusive right to determine the primary residence of K.A.R. The trial court signed temporary orders denying Kenneth's request for temporary modification of conservatorship, ordering a psychological evaluation of Kenneth, Lisa, and K.A.R. by Dr. Ferrell, and ordering them to participate in counseling with Dr. Micheletti.

During a therapy session with Dr. Micheletti on March 20, 2003, Kenneth indicated that he was considering dismissing his petition to modify. Learning of this possibility through the therapy session, Lisa promptly notified her lawyer, Edwin J. Terry, Jr., of this development. On Monday, March 24, 2003, Lisa's lawyer called Kenneth's lawyer, appellant H. Lynne Clarke, to discuss Kenneth's position and to seek to avoid unnecessary fees and expenses. Clarke told Terry that she believed Kenneth was interested in settling the case, but that she had not spoken to him. According to Terry, Clarke stated she would call him back on March 25, 2003. Though Clarke may not have spoken to Kenneth as of March 24, she had received on March 20, a letter faxed by Kenneth, stating that he wished to drop his case against Lisa and requesting that "all parties involved immediately cease and desist all actions." Clarke did not inform Terry of this communication from Kenneth until April 1. Clarke did not call Terry back until 4:30 p.m. on Thursday, March 27, 2003, when she informed a legal assistant at Terry's office that Clarke still had not spoken to Kenneth, that Clarke would be out of her office the next day, and that she did not expect to speak to her client until the mediation scheduled for the following Monday, March 31. Clarke was told that Terry, whose office was in Austin, was out of town and that he would be traveling to Houston for the Monday mediation. Clarke told Terry's legal assistant she planned on working out a settlement at the mediation on Monday.

### Lisa's Counter–Petition

On Friday, March 28, Lisa filed a counter-petition to modify in which she requested the court to modify the divorce decree to add as a condition for Kenneth's access to and possession of K.A.R. that Kenneth continue participating in family counseling with Dr. Micheletti. In her motion-for-new-trial affidavit Clarke testifies to the following, among other things:

- Clarke finally contacted Kenneth by telephone during the afternoon of March 28.
- Kenneth was distressed to learn of Lisa's counter-petition but agreed to stay in counseling with Dr. Micheletti.
- During their March 28 conversation, Kenneth indicated his unwillingness to attend the mediation.
- Clarke advised Kenneth to attend the mediation and not to nonsuit his peti-

---

**1.** Kenneth L. Richardson died after the trial in the court below but before the trial court signed its judgment. In this opinion, for ease of reference, we refer to both Kenneth L. Richardson and the Estate of Kenneth L. Richardson as "Kenneth," unless otherwise indicated.

tion; Clarke counseled Kenneth as to the impact of Lisa's counter-petition.
- Kenneth agreed to talk with Clarke about the issue again over the weekend.
- On Sunday morning, March 30, Kenneth again talked to Clarke and was adamant that he would not attend the mediation. Kenneth instructed Clarke to notify Lisa's counsel of this fact.

### Kenneth's Nonsuit

On Sunday, March 30, a legal assistant from Terry's office was in the office and noticed a faxed letter received at 12:04 p.m. that day from Clarke. The letter stated that Kenneth was nonsuiting his petition to modify and would not attend the mediation the next day. Terry, however, was already in Houston, and he was unable to confirm whether the mediation had been canceled. Terry stayed overnight in Houston and prepared for the mediation.

On Monday, March 31, Terry learned that a similar message had been faxed to the mediator. Neither Clarke nor Kenneth appeared for the scheduled mediation. Neither filed any motion with the trial court seeking relief from attending the court-ordered mediation. However, on March 31, Kenneth filed a nonsuit as to his petition to modify, acknowledging that Lisa's counter-petition was still pending.

### Clarke's Motion to Withdraw

With trial on the counter-petition already set for April 7, 2003, on April 1, Clarke filed a motion to withdraw as Kenneth's counsel. Clarke attached to this motion Kenneth's March 20, 2003, letter to her.

### Lisa's Motion for Sanctions

On April 3, Lisa filed a motion for sanctions against Kenneth and Clarke, urging the court to grant relief based on its inherent power to sanction. Lisa sought attorney's fees and expenses for attending the mediation that never occurred and for preparing, filing, and having a hearing on the motion for sanctions. Lisa alleged that the trial court should sanction Kenneth and Clarke for "engaging in bad faith litigation practices" and for engaging in a "course of abusive conduct" that created needless effort and expense. In her motion-for-new-trial affidavit, Clarke states that she received notice on April 3 that the trial court would hear the motion for sanctions on April 7. On April 4, Kenneth filed a motion for continuance.

### Trial Court's Rulings

Kenneth and Clarke did not appear for either the trial or the sanctions hearing on April 7. The trial court denied Kenneth's motion for continuance and heard evidence. The trial judge then announced in open court that he was granting Lisa's counter-petition and granting sanctions against Kenneth and Clarke.

On April 27, Kenneth committed suicide. Clarke filed a suggestion of Kenneth's death, and shortly thereafter the trial judge signed a written order granting Lisa's counter-petition, awarding $37,000 in attorney's fees and expenses as child support, awarding appellate attorney's fees, and ordering sanctions against Kenneth and Clarke for $13,000 in fees and expenses. Kenneth and Clarke filed a "Motion to Vacate Default Judgment and Motion for New Trial," which was overruled by operation of law.

### II. ANALYSIS

**A. Did the trial court abuse its discretion in denying Kenneth's motion for continuance?**

In his first issue, Kenneth asserts that the trial court abused its discretion in

denying his motion for continuance. On February 17, 2003, the trial court set this case for trial at 9:00 a.m. on April 7, 2003 in Galveston. On April 4, 2003, Kenneth filed a motion for continuance. The only ground asserted in the motion was that Clarke had two other cases set for trial at 10:00 a.m. on April 7, 2003, in the 311th District Court in Houston. Kenneth attached to his motion for continuance scheduling orders from these cases showing that on January 14, 2003, these cases were set for trial on April 7, 2003. The trial court denied the motion for continuance on April 7, 2003.

On appeal, Kenneth first relies upon *Smith v. Babcock & Wilcox Const. Co., Inc.*, 913 S.W.2d 467 (Tex.1995). However, this case did not involve an appeal from a denial of a motion for continuance; rather, it involved an appeal from the trial court's denial of a motion to reinstate following a dismissal for want of prosecution based on the failure of the plaintiffs and their attorneys to appear at trial. *See Smith*, 913 S.W.2d at 468. In the instant case, Kenneth was the counter-defendant. The trial court denied Kenneth's motion for continuance and proceeded with trial in the absence of Kenneth and his lawyer. This case does not involve a dismissal for want of prosecution or a motion to reinstate. Furthermore, unlike in *Smith*, there is no evidence in this record that Kenneth's counsel was actually in trial in another case when the trial court called the instant case to trial, and there is no evidence in this record that Clarke believed the trial court would grant a continuance based on her being in trial in another court. *See id.* at 467–68 (basing decision on attorney's actually being in trial in another court when trial court called case to trial and

based on attorney's reasonable explanation of how he understood the trial court to have previously stated that it would grant a continuance if attorney actually was in trial in another case when trial court called the case to trial). Therefore, we conclude the *Smith* case is not on point. *See id.*

Kenneth's main argument is based on Rule 10 of the Regional Rules of Administration of the Second Administrative Judicial Region. *See* SEC. ADMIN. JUD. REG., REG. R. ADMIN. 10(b). This rule states that, if an attorney is assigned to trial in two courts for the same day and if the courts do not agree on the priority between the cases, then priority will be determined by a set of rules that gives priority, among other things, to cases that were set for trial first. *See id.* The record contains nothing to suggest that the trial court reached any agreement with the 311th District Court. Because Clarke's Houston trial settings were set first, these rules would give priority to the Houston settings over the setting in this case.[2] *See id.* Kenneth cites a case in which the Texas Supreme Court conditionally granted mandamus relief based in part on a trial court's violation of an earlier version of this same rule. *See Dancy v. Daggett*, 815 S.W.2d 548, 549–50 (Tex.1991).

The *Dancy* case is not on point because in that case Dancy's lawyer promptly notified the trial court of the conflicting settings. *See id.* at 549; *Spearman v. Texas Dept. of Corr.*, 918 S.W.2d 23, 24–25 (Tex. App.-Eastland 1996, no writ) (distinguishing *Dancy* because lawyer in *Spearman* did not promptly notify the trial court of the conflicting settings). In this case, Kenneth's motion for continuance does not state that he notified the trial court of this

---

**2.** We note that Lisa's counsel asserted at the hearing on the motion for continuance that, in October of 2002, Clarke actually had agreed to an April 7 trial setting in this case. Lisa's counsel appears to have argued that, but for dilatory conduct by Clarke, the trial court would have set this case for trial before the Houston cases were set. However, on appeal, we presume for the sake of argument that the Houston cases were set first.

conflict, and on appeal, Kenneth states that he notified the trial court early on April 7, 2003 that one of the Houston cases would be tried that morning. Rule 10 of the Regional Rules of Administration for the Second Administrative Region states that an attorney assigned to trial in two different cases on the same day has a duty to notify the affected courts of the conflicting trial settings as soon as they are known. *See* SEC. ADMIN. JUD. REG., REG. R. ADMIN. 10(b)(1); *see also* HARRIS CTY. FAM. R. 8.7 (stating "[i]t is the duty of counsel to report promptly to the court immediately upon learning of a conflicting engagement that might preclude that counsel's availability for trial. Failure to do so may result in sanctions"). In her motion-for-new-trial affidavit, Clarke states that on February 19, 2003, she received the trial court's order setting this case for trial at 9:00 a.m. on April 7, 2003. Clarke did not file a motion for continuance until 4:14 p.m. on Friday, April 4, and Kenneth brought this conflict to the trial court's attention no earlier than at 8:47 a.m. on April 7, when Clarke's office left a message via voicemail for the trial court. Unlike Dancy's lawyer, Clarke failed to notify the trial court of the conflicting settings as soon as she was aware of them, which was no later than February 19, 2003. *See Dancy*, 815 S.W.2d at 549. By violating Rule 10, Clarke deprived the trial court of the opportunity of working out the conflicting setting with the presiding judge of the 311th District Court in Harris County. *See* SEC. ADMIN. JUD. REG., REG. R. ADMIN. 10(b)(2) (stating that "[i]nsofar as practicable, Judges should attempt to agree on which case has priority . . ."). Therefore, we conclude the trial court did not abuse its discretion in denying a continuance based on Kenneth's assertion of a conflicting trial setting that allegedly had priority under Rule 10. *See Spearman*, 918 S.W.2d at 24–25 (distinguishing *Dancy* and holding trial court did not abuse its discre-

tion in denying continuance based on conflicting trial setting in criminal case in another county in part because attorney for nonappearing party did not promptly bring the conflicting setting to the trial court's attention upon learning about it). Accordingly, we overrule Kenneth's first issue.

**B. Did the trial court err in awarding appellate attorney's fees based on the lack of a specific request?**

■ In his second issue, Kenneth first asserts the trial court erred in awarding appellate attorney's fees because Lisa did not specifically plead for them. Lisa requested attorney's fees in her counter-petition, but she did not specifically request appellate attorney's fees. Kenneth cites no cases holding that a general request for attorney's fees is insufficient to support an award of appellate fees. Because no special exceptions were sustained as to Lisa's counter-petition, we construe that petition liberally and in Lisa's favor. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000). Under this liberal construction, we conclude that Lisa sufficiently requested appellate attorney's fees by her general request for attorney's fees in her counter-petition. *See, e.g., Superior Ironworks, Inc. v. Roll Form Prods., Inc.*, 789 S.W.2d 430, 431 (Tex. App.-Houston [1st Dist.] 1990, no writ) (noting that a general prayer for attorney's fees is sufficient to authorize an award of appellate fees). Accordingly, we overrule Kenneth's second issue to the extent it is based on Lisa's failure to specifically request appellate attorney's fees.

**C. Did the trial court err in awarding appellate attorney's fees because the award of these fees was not made conditional on the requesting party's success on appeal?**

■ In his second issue, Kenneth also asserts that the trial court erred in award-

ing appellate attorney's fees not conditioned on Lisa's success on appeal. In her brief, Lisa concedes error in this regard and agrees that this court should reform the judgment to condition the award of appellate fees on her success on appeal. Accordingly, we sustain Kenneth's issue to this extent, and we modify the trial court's judgment to condition the award of appellate attorney's fees on Lisa's success on appeal.

### D. Did the trial court err in awarding attorney's fees and expenses as child support?

■ In his third issue, Kenneth asserts that the trial court erred in awarding the $37,000 in attorney's fees and expenses as child support. On appeal, Lisa concedes error as to this issue and agrees that the proper remedy is to modify the judgment to delete all characterization of attorney's fees or expenses as child support. Accordingly, we sustain Kenneth's third issue and modify the trial court's judgment to strike all parts of the judgment that allow enforcement of any amount thereunder as child support.

### E. Did the trial court err in granting the motion for sanctions?

In their fourth and fifth issues, Kenneth and Clarke assert the trial court abused its discretion in granting Lisa's motion for sanctions for the following reasons:

(1) Lisa did not serve her motion for sanctions on Kenneth personally, even though the motion sought to hold him in contempt.

(2) The trial court violated Texas Rules of Civil Procedure 21 and 21a as well as constitutional guarantees of due process by holding a hearing on Lisa's motion with four days' notice rather than six days' notice, as allegedly required by Rule 21.

(3) Lisa did not verify the motion for sanctions.

(4) Although the trial court awarded sanctions based on its inherent power, there was no evidence at the sanctions hearing that showed conduct by Kenneth or Clarke that significantly interfered with the trial court's exercise of one of its core functions.[3]

### 1. Personal Service of Sanctions Motion

■ Though Lisa sought to hold Kenneth in contempt as part of the relief requested in her motion for sanctions, she did not request this relief at the sanctions hearing and the trial court did not grant any contempt judgment. Personal service on Kenneth might well be necessary to support a contempt judgment against him, but Kenneth and Clarke cite no case requiring personal service merely because the movant requested, though did not receive, a contempt judgment. Because the trial court did not render a contempt judgment, personal service was not required. *See Ex parte Blanchard,* 736 S.W.2d 642, 643 (Tex.1987) (stating that, in constructive contempt cases, due process requires that contemnor be personally served with show—cause order or have actual knowledge of the contents of such an order, otherwise the *contempt judgment* is void).

---

**3.** Kenneth and Clarke do not assert that the trial court abused its discretion in determining that there was good cause to sanction them. Kenneth and Clarke do not challenge the trial court's determination that their conduct constituted bad faith litigation practices that caused Lisa to incur additional attorney's fees and expenses. Nor do Kenneth and Clarke challenge the trial court's determination that $13,000 is a just and appropriate sanction for their conduct in this regard. Accordingly, we do not reach these issues.

Accordingly, we reject the notion that lack of personal service of the sanctions motions provides grounds for error.

### 2. Notice of the Sanctions Hearing

■ Kenneth and Clarke also assert that, although they received four days' notice of the April 7 sanctions hearing, they were entitled to six days' notice under Rules 21 and 21a of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 21, 21a. Kenneth and Clarke assert that, by failing to provide six days' notice of the sanctions hearing, the trial court abused its discretion and violated their constitutional rights to due process. Notably, this is not a case in which parties were sanctioned and received no notice of the sanctions hearing. Kenneth and Clarke received four days' notice of the sanctions hearing. Presuming for the sake of argument that the three-day notice period under Rule 21 was extended to six days by Rule 21a, Rule 21 still provides that the trial court may shorten the notice period. *See* TEX.R. CIV. P. 21; *Buruato v. Mercy Hosp. of Laredo,* 2 S.W.3d 385, 387–88 (Tex.App.-San Antonio 1999, pet. denied). The trial court's action in conducting a hearing on four days' notice rather than six days' notice will not be disturbed on appeal unless, under the circumstances, the trial court abused its discretion in shortening the notice period. *See Buruato,* 2 S.W.3d at 387–88.

In her motion-for-new-trial affidavit, Clarke states that on April 3, 2003, she received a fax with Lisa's motion for sanctions and notice of a hearing to be held thereon on April 7, 2003. Although the following afternoon Kenneth filed a motion for continuance as to the trial setting on April 7, 2003, neither Kenneth nor Clarke ever filed a motion to continue or reset the sanctions hearing, nor did they file any objection, prior to the sanctions hearing, based on insufficient notice. On appeal, Kenneth and Clarke do not discuss the trial court's ability to shorten the notice period. After reviewing the record and the circumstances present in this case, we conclude that, even if the rules ordinarily would have required six days' notice, the trial court did not abuse its discretion or violate Kenneth and Clarke's due process rights in shortening the notice period to four days. *See Massingill v. Swanner,* No. 05–04–00918–CV, 2005 WL 518965, at *1–2 (Tex.App.-Dallas Mar.7, 2005, no pet. h.) (mem.op.) (holding trial court did not abuse its discretion in shortening notice period for temporary-injunction hearing to one day); *Buruato,* 2 S.W.3d at 387–88 (holding trial court did not abuse its discretion in shortening notice period for motion from six days to four days); *Petitt v. Laware,* 715 S.W.2d 688, 689–91 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.) (holding trial court did not abuse its discretion in shortening notice period for motion to quash from three days to one day); *Standard Sav. Ass'n v. Cromwell,* 714 S.W.2d 49, 50–51 (Tex.App.-Houston [14th Dist.] 1986, no writ) (holding trial court did not abuse its discretion in shortening the notice period to no prior notice of hearing on motion to withdraw deemed admissions that was granted just before trial began). Accordingly, we reject this notice argument as grounds for overturning the sanctions.

### 3. Lack of Verification or Affidavit on the Sanctions Motion

■ Kenneth and Clarke also assert that the trial court erred in granting sanctions because Lisa did not verify the motion for sanctions or attach an affidavit thereto. They cite no cases in support of this proposition. Though Lisa did not verify her motion for sanctions or attach a supporting affidavit, the trial court held a hearing and received evidence on this mo-

tion. Motions for sanctions may be and often are verified or supported by affidavits, but there is no per se requirement that they be filed in this fashion. Lisa's failure to verify her sanctions motion or to attach an affidavit to it does not make the trial court's award of sanctions an abuse of discretion.

### 4. Interference with the Trial Court's Core Functions

■ Kenneth and Clarke further assert that there is no evidence showing that they engaged in conduct that significantly interfered with the trial court's exercise of one of its core functions. For the trial court to have exercised its inherent power to sanction Kenneth and Clarke, there must have been some evidence that their conduct significantly interfered with the trial court's legitimate exercise of one of its core functions. *See McWhorter v. Sheller*, 993 S.W.2d 781, 788–89 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The trial court based the sanctions on its findings of the following conduct by Kenneth and Clarke:

(1) Kenneth's failure to appear at trial;

(2) Clarke's failure to timely notify Lisa's counsel of Kenneth's desire to nonsuit his petition to modify after Kenneth's March 20, 2003 faxed letter;

(3) Kenneth's failure to complete a court-ordered psychological evaluation;[4] and

(4) The unilateral cancellation of a court-ordered mediation without adequate notice.

If even one of these grounds constitutes conduct that significantly interferes with a core function of the court and there is legally sufficient evidence to support it, we must affirm the trial court's order. At the outset, we note that there are potential problems with sanctioning Kenneth and Clarke for some of this conduct.

■ Although the trial court was acting within its discretion in proceeding to trial in the absence of Kenneth and Clarke and in granting Lisa all of the relief sought in her counter-petition, the mere failure of Kenneth and Clarke to appear for trial should not expose them to sanctions. A defendant who fails to appear for trial may be subject to a judgment following trial in his absence, but the worst-case scenario for such a defendant should be an adverse judgment for all relief sought in the plaintiff's pleadings. *See Sharpe v. Kilcoyne*, 962 S.W.2d 697, 698–702 (Tex.App.-Fort Worth 1998, no pet.) (affirming sanctions against defendant that were limited to a post-answer default judgment as to liability and damages after defendant moved from Texas to Canada, refused to accept correspondence from court and counsel regarding the lawsuit, and failed to appear at two deposition settings, a sanctions hearing, and a trial setting). Generally, failure to appear at trial does not interfere with the trial court's exercise of one of its core functions. Likewise, there might be potential conflicts with the attorney-client relationship and the attorney-client privilege if an attorney were sanctioned for failure to promptly notify opposing counsel of her client's desires regarding the case, even if

---

**4.** The record reflects that on March 26, 2003, Dr. Ferrell sent a letter to the parties stating that he had been unable to complete the psychological evaluation ordered by the trial court because he had not been able to schedule a home visit with Kenneth, despite leaving numerous messages for Kenneth and sending

him a fax. Because of these difficulties and because Dr. Ferrell was scheduled to be out of town from March 30 through April 6, Dr. Ferrell indicated that he would not be able to have the psychological evaluation completed by April 7, 2003.

those desires include dismissing the client's claims.

Nonetheless, under the applicable standard of review, there is legally sufficient evidence in the record to support the trial court's determination that Kenneth and Clarke unilaterally canceled and failed to attend a court-ordered mediation without adequate notice.[5] *See City of Keller v. Wilson,* 168 S.W.3d 802, 808-827 (Tex., 2005) (setting out legal sufficiency standard of review); *Roberts v. Rose,* 37 S.W.3d 31, 33–35 (Tex.App.-San Antonio 2000, no pet.) (affirming sanctions against attorney for failing to appear at a court-ordered mediation). By doing so, they violated a court order, signed February 17, 2003, in which the trial court expressly directed the parties and their counsel to "appear and attend" the mediation.[6] Included within a trial court's core functions is the management of its docket and the issuance and enforcement of its orders. Indeed, it is the office of the court to issue orders and-when and if the court deems it appropriate-to vacate, rescind, or modify its orders. Lawyers and litigants do not have the authority to issue orders, nor do they have the authority to vacate, rescind, or modify court orders. When Clarke chose to cancel the court-ordered mediation, she effectively usurped the court's role and displaced the court as decision maker. By taking it upon herself to countermand that which the court had ordered, Clarke interfered with a core function of the court.

In addition to this act of interference, Clarke failed to obey the court's command to appear for mediation. The failure to comply with a trial court's order to partici-

pate in mediation constitutes significant interference with the court's core functions and, therefore, can support an award of sanctions imposed under the court's inherent power to sanction. *See Kutch v. Del Mar Coll.,* 831 S.W.2d 506, 510–12 (Tex. App.-Corpus Christi 1992, no writ) (stating that violation of a court order relating to the court's management and administration of a pending case generally will be significant interference with a core function). The evidence in the record shows that the trial court ordered both the parties and their counsel to attend the mediation and that, despite this express directive, Clarke did not appear as ordered, nor did she offer any explanation or excuse for her failure to attend notwithstanding her client's refusal to do so. When Clarke elected not to attend the mediation as ordered by the court and instead chose to unilaterally cancel it, the trial court had not granted (and she had not sought) relief from the order compelling her attendance, nor did she have the agreement of all other parties to postpone or reschedule the mediation. At no point did Clarke ask to be excused from compliance with the court's order and at no point did the court excuse her non-compliance. Although the dissent correctly notes that Clarke could not control Kenneth's behavior, Clarke is accountable for her own conduct and her unexcused failure to comply with the trial court's order is legally sufficient evidence to support the sanctions. *See id.*

The dissent concludes that the usurpation of the court's role and the failure to comply with the court's order constitute no evidence of significant interference with

---

**5.** There is also legally sufficient evidence that Kenneth failed to complete the psychological evaluation ordered by the trial court. *See City of Keller v. Wilson,* 168 S.W.3d 802, 808-827, (Tex., 2005).

**6.** In the same order, the trial court instructed the mediator to advise the court, upon completion of the mediation, "whether the parties and their counsel appeared as ordered, and whether a settlement resulted."

the trial court's core functions, reasoning that these were events beyond Clarke's control. The dissent states that "as soon as Clarke was aware of Kenneth's unequivocal refusal to attend, she attempted to notify those involved with the mediation," and that, because Kenneth refused to attend the mediation despite Clarke's advice to do so, Clarke could "do nothing more in such a situation except withdraw from the representation." We respectfully disagree. There were other alternatives Clarke could have pursued that would not have involved the usurpation of the court's duties or the violation of the court's order. For example, Clarke could have filed a motion asking the trial court to cancel or postpone the mediation. Pursuing this option would have allowed the court, whose office it is to rule on such matters, to decide whether its previous order should be modified and, if so, how and under what conditions. Likewise, Clarke could have attended the mediation as ordered and attempted to resolve the remaining issues. She indicated in her affidavit that Kenneth was willing to agree to the relief sought in Lisa's counter-petition and, presumably, Clarke had authority to settle on that basis. But even without settlement authority, Clarke could have attended the mediation and worked toward a resolution of the matters in dispute. By pursuing this option, Clarke would have been in the compliance with the court's order even if her client was not.

The dissent points to facts that tend to mitigate the circumstances surrounding Clarke's failure to appear as ordered, stating, for example, that Clarke attempted to notify those involved with the mediation as soon as she was aware of Kenneth's "unequivocal refusal to attend." We acknowledge that Clarke was in a difficult situation and that she made some effort to mitigate inconvenience and expense after deciding on Sunday not to attend the mediation the court had ordered for the following day. Nonetheless, eight days before her Friday, March 28, conversation with Kenneth, Clarke received a fax from him in which he stated he no longer wished to participate in this case. Clarke also knew that opposing counsel would be coming from out of town for the Monday, March 31 mediation. In this context, the trial court reasonably could have concluded that Clarke should have resolved the issue of Kenneth's attendance at the mediation during her phone conference with him on Friday, March 28. The trial court was not required to limit its consideration of the facts to what Clarke did to mitigate; rather, the trial court was free to consider all of the circumstances surrounding Clarke's failure to comply with its order in determining whether sanctions were appropriate, including that Clarke had learned of Kenneth's unwillingness to attend the mediation earlier in the week and did not seek to reschedule at that time, that she did not appear as ordered, and that she opted to cancel the mediation herself rather than seek the court's permission.

We acknowledge that another trial court might well have declined to impose sanctions under the circumstances of this case, but that is no answer to the issue before us. Clarke's challenge to the sanctions order is that there is no evidence to support it and this is the legal standard against which we must measure the propriety of the trial court's order.

Under these circumstances and based on the trial court's findings, we conclude there is legally sufficient evidence that Kenneth and Clarke engaged in conduct that significantly interfered with the trial court's legitimate exercise of one of its core functions. *See Kings Park Apartments, Ltd. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 101 S.W.3d 525, 541 (Tex. App.-Houston [1st Dist.] 2003, pet. denied)

(holding there was legally sufficient evidence of conduct that significantly interfered with the trial court's legitimate exercise of one of its core functions); *Kutch*, 831 S.W.2d at 510–12. On this basis, we reject their challenge to the trial court's sanctions.[7]

Having rejected all of the arguments of Kenneth and Clarke under their fourth and fifth issues, we overrule these issues.[8]

## F. Did the trial court abuse its discretion in denying Kenneth and Clarke's motion for new trial?

In their seventh issue, Kenneth and Clarke assert that the trial court abused its discretion in denying their motion for new trial because this motion allegedly satisfied the *Craddock* standard. *See Ivy v. Carrell*, 407 S.W.2d 212, 213–15 (Tex.1966); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). The trial court did not hold a hearing on the motion for new trial, which was overruled by operation of law. In analyzing this issue, we must determine whether the trial court abused its discretion in impliedly determining that Kenneth and Clarke's motion for new trial failed to present the following: (1) facts showing that their failure to appear at trial and the sanctions hearing was not intentional or the result of conscious indifference on their part but was due to a mistake or accident, and (2) facts which in law would constitute a meritorious defense.[9] *See Ivy*,

407 S.W.2d at 214; *Vickery v. Texas Carpet Co., Inc.*, 792 S.W.2d 759, 761 (Tex. App.-Houston [14th Dist.] 1990, writ denied). In determining whether there is intentional disregard or conscious indifference, the trial court examines the knowledge and acts of the parties who failed to appear. *See Vickery*, 792 S.W.2d at 761. A failure to appear is not intentional or due to conscious indifference merely because it was deliberate; rather, it must also be without justification. *See Smith*, 913 S.W.2d at 468. Proof of such justification—accident, mistake, or other reasonable explanation—negates intent or conscious indifference. *See id.*

Clarke's motion-for-new-trial affidavit states the following:
- On March 28, Clarke notified Kenneth of Lisa's counter-petition and counseled Kenneth as to its impact.
- Contrary to Clarke's advice to Kenneth, he insisted on nonsuiting his petition on March 31, and not attending the court-ordered mediation scheduled for that date.
- Clarke filed her motion to withdraw on April 1, because Kenneth "was adamant that he could not go further in the case."
- Although Clarke was able to resolve one of the two Harris County cases set for trial on April 7, she could not resolve the other one, so she filed a motion for continuance for Kenneth

---

7. Kenneth and Clarke have not challenged the sanctions based on the trial court's failure to find that their conduct significantly interfered with the trial court's legitimate exercise of one of its core functions. However, even if they had done so, there is sufficient evidence in the record to imply a finding to this effect under Texas Rule of Civil Procedure 299. *See* Tex.R. Civ. P. 299.

8. The sixth issue asserted by Kenneth and Clarke concerning the trial court's failure to

file findings of fact and conclusions of law is now moot based on this court's abatement order and the trial court's subsequent issuance of findings of fact and conclusions of law.

9. We need not reach and do not discuss the third requirement of the *Craddock* standard-that granting a new trial would not occasion a delay or otherwise work an injury upon Lisa. *See Ivy*, 407 S.W.2d at 214.

on April 4, based on the Regional Rules of Administration, which appeared to give preference to the Harris County case.

- On April 7, at 8:47 a.m., Clarke's office called the trial court and left a voicemail message stating that Clarke had filed a motion for continuance and stating that she "was in fact on [her] way to trial in Harris County."

In the body of their motion for new trial, Kenneth and Clarke state that Clarke's legal assistant called the trial court at 8:47 a.m. on April 7 to "inform the Court that Ms. Clarke was in trial in Harris County." However, in a seven-page, single-spaced affidavit, Clarke never actually states that she was in trial in Harris County when the trial court conducted the trial and sanctions hearing in this case. At one point in the appellants' brief, Kenneth and Clarke state that Clarke was in trial in Harris County; however, to support this proposition, they cite only Clarke's affidavit testimony that her office left a message that she was on her way to trial in Harris County. The fact that her office left such a message does not necessarily mean that Clarke was actually in trial in the Harris County case on the morning of April 7. In their argument under the seventh issue, Kenneth and Clarke also state that "as is the frequent situation in Family Law, cases are set for trial but end up settling."

Regardless of whether Clarke's Harris County case settled just before it was scheduled to go to trial, Kenneth and Clarke's motion for new trial does not assert facts showing a reasonable explanation for their deliberate failure to appear

on April 7.[10] As to the sanctions hearing, Kenneth and Clarke did not file a motion to continue or reset this hearing, nor did they file any pre-hearing objection to the trial court conducting this hearing on April 7. Therefore, their motion for new trial does not show that they lacked intent or conscious indifference. *See Vickery,* 792 S.W.2d at 761–62 (holding trial court did not abuse its discretion as to first prong of *Craddock* in case in which attorney with conflicting trial settings failed to present a motion for continuance to the trial court); *see also Carpenter v. Cimarron Hydrocarbons Corp.,* 98 S.W.3d 682, 686 (Tex.2002) (stating that, outside of the default-judgment context, *Craddock* does not apply to situations in which the procedural rules afford the party a remedy, for example the opportunity to seek a continuance).

As to the trial setting, this case is different from *Smith. See Smith,* 913 S.W.2d at 467–68. The motion for new trial in this case and the attached affidavit do not assert that Clarke was in trial in Harris County on the morning of April 7, 2003. In *Smith,* the movants for reinstatement asserted that their counsel was actually in trial in another county when the trial court called the case to trial. *See id.* The movants' counsel in *Smith* explained how he reasonably believed the trial court, in previously denying their motion for continuance, had stated that the court would grant a continuance if in fact the movants' counsel was in trial in the other court when it called the movants' case to trial. *See id.* Further, the movants' counsel sent a letter to the trial court memorializing this understanding. *See id.* Kenneth and Clarke's motion for new trial and

---

**10.** In their seventh issue, Kenneth and Clarke argue they lacked intent or conscious indifference solely based on Clarke's conflicting trial setting in Harris County. In any event, Clarke's affidavit did not show that Kenneth was innocent in failing to appear; rather, Clarke's affidavit shows that, despite notice to him (through Clarke) of the trial setting and sanctions hearing on April 7, Kenneth, deliberately and without reasonable explanation, failed to appear on April 7.

Clarke's affidavit in support thereof do not assert that Clarke believed that her motion for continuance, which was filed on the eve of trial, would be granted. The record does not contain any letter from Clarke memorializing her understanding, if any, that the trial court in this case would grant a continuance if she were actually in trial in the 311th District Court on the morning of April 7. Furthermore, the motion for new trial and Clarke's affidavit do not assert that Clarke was unable to arrange for another attorney to handle the Harris County matter for her on April 7, so that she could be present in the trial court in this case. On this record, we conclude that the trial court did not abuse its discretion in impliedly concluding that Clarke lacked justification for her deliberate failure to appear on April 7. *See id.; Vickery*, 792 S.W.2d at 761–62.

On appeal, Kenneth and Clarke argue that, in their motion for new trial, they showed a lack of intent and lack of conscious disregard by demonstrating that Clarke tried to comport with the Regional Rules of Administration of the Second Administrative Judicial Region in assessing whether to file a motion for continuance and in deciding which trial to attend. However, as discussed in Section II. A., above, the trial court did not abuse its discretion in impliedly determining that Clarke violated these rules and deprived the trial court of an opportunity to work out the conflicting setting with the presiding judge of the 311th District Court in Harris County. *See* Sec. Admin. Jud. Reg., Reg. R. Admin. 10(b)(1) (stating that lawyers who have conflicting trial settings have a duty to notify the affected courts of the conflicting trial settings as soon as they are known). Therefore, the trial court did not abuse its discretion by impliedly determining that these rules do not provide a reasonable explanation or justification for Clarke's deliberate failure to appear at the trial and sanctions hearing on April 7, 2003.

Furthermore, we disagree with Kenneth and Clarke's assertion on appeal that their motion for new trial sets forth facts constituting a meritorious defense to the trial court's finding of sanctionable conduct by them as well as defenses based on allegedly improper notice and violation of due process. As discussed in Section II. E., above, the trial court had the ability to exercise its inherent power to sanction Kenneth and Clarke, and Kenneth and Clarke's motion for new trial does not set forth facts setting up a defense to the sanctionable nature of their conduct regarding the mediation and the court-ordered psychological evaluation. Their motion for new trial does not set forth facts showing that the trial court erred in shortening the notice period for the sanctions hearing from six to four days or showing that the trial court violated their due process rights. *See Ivy*, 407 S.W.2d at 214–15 (holding trial court did not err in denying motion for new trial because movant did not set forth facts that in law constitute a meritorious defense). Accordingly, we overrule the seventh issue.[11]

### III. Conclusion

The trial court did not err in denying Kenneth's motion for continuance. Lisa's counter-petition supports an award of appellate attorney's fees. The trial court did not abuse its discretion in assessing monetary sanctions against Kenneth and Clarke based on Lisa's failure to personally serve Kenneth or her failure to verify her motion

---

**11.** Even if Kenneth and Clarke had asserted generally that the trial court erred in denying their motion for new trial, based on a review of the issues presented therein, we still would conclude that the trial court did not abuse its discretion in denying this motion.

for sanctions. The trial court did not abuse its discretion in shortening the notice period as to the sanctions hearing from six to four days; and therefore, the trial court did not violate Texas Rules of Civil Procedure 21 and 21a or constitutional guarantees of due process. The evidence presented at the sanctions hearing is legally sufficient to show that the conduct by Kenneth and Clarke significantly interfered with the trial court's exercise of one of its core functions. The trial court did not abuse its discretion in denying a new trial and in impliedly determining that Kenneth and Clarke's motion for new trial failed to present either facts showing that their failure to appear on April 7 was not intentional or the result of conscious indifference, but was due to a mistake, accident, or facts which in law would constitute a meritorious defense.

Nonetheless, Lisa concedes error as to the trial court's failure to condition the award of appellate attorney's fees on her success on appeal and as to the trial court's awarding of attorney's fees and expenses as child support. Accordingly, we modify the trial court's judgment (1) to condition all awards of appellate attorney's fees on Lisa's success on appeal, and (2) to strike all parts of the judgment that allow enforcement of any amount thereunder as child support. As modified, we affirm the trial court's judgment.

GUZMAN, J., dissenting.

EVA M. GUZMAN, Justice, dissenting.

On April 27, 2003, Lynne Clarke's client, Kenneth Richardson, committed suicide. In the months preceding his death, Kenneth was involved in an extremely distressing experience—litigation over the custody of his minor child, K.A.R. Although the record indicates that Kenneth's state of mind during the pretrial proceedings was at best fragile, the trial court entered an order sanctioning Clarke and Kenneth, concluding that "[u]nilaterally canceling the court-ordered mediation without adequate notice" constituted a "bad faith litigation practice[ ]," [1] and holding them jointly and severally liable for the sanctions imposed.

It is well established under Texas law that a trial court has the inherent power to impose sanctions in an appropriate case. See, e.g., In re Bennett, 960 S.W.2d 35, 40 (Tex.1997) ("A court has the inherent power to impose sanctions on its own motion in an appropriate case."); Kings Park Apartments, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 101 S.W.3d 525, 541 (Tex.App.-Houston [1st Dist.] 2003, pet. denied)(recognizing the court's inherent power to sanction); Kennedy v. Kennedy, 125 S.W.3d 14, 19 (Tex.App.-Austin 2002, pet. denied) (same); In re N.R.C., 94 S.W.3d 799, 808 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (same); Kutch v. Del Mar College, 831 S.W.2d 506, 509–10 (Tex. App.-Corpus Christi 1992, no writ) (same); see also Chambers v. NASCO, Inc., 501 U.S. 32, 63, 111 S.Ct. 2123, 115 L.Ed.2d 27

1. The trial court also stated in the sanctions order that failure to notify opposing counsel of Kenneth's "desires" to dismiss his cause of action, Kenneth's failure to complete the court-ordered psychological evaluation, and failing to appear at trial constituted bad faith litigation practices. As keenly noted by the majority, "there are potential problems with sanctioning Kenneth and Clarke for some of this conduct." The majority then addresses *only* the failure to attend mediation as conduct allegedly sufficient to support the sanctions order, and further, in a footnote, merely states there is sufficient evidence in the record that Kenneth failed to complete the court-ordered psychological evaluation. Although I conclude there are "problems" in sanctioning Clarke for *any* of this conduct based on the record evidence, I limit my discussion, as did the majority, to the failure to attend the mediation and briefly address the failure to attend the court-ordered evaluation.

(1991) (recognizing inherent power of court to sanction bad faith litigation practices, even in the face of a statute or a rule); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex.1979) (noting the court's inherent power "exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity"). Courts, however, also recognize there are established limits to the trial court's inherent power to sanction. The power should be used sparingly, and the sanctions must be just and appropriate. *See Shook v. Gilmore & Tatge Mfg. Co.*, 851 S.W.2d 887, 891–92 (Tex. App.-Waco 1993, writ denied); *Kutch*, 831 S.W.2d at 510. In this case, the majority's analysis fails to recognize the limitations of the trial court's inherent power to sanction and suggests that a violation of a court order is, per se, a bad faith litigation practice.[2] Because there is no evidence in the record that Clarke engaged in any bad faith litigation practices during the course of this suit which significantly interfered with the trial court's exercise of its core functions, I respectfully dissent from the majority's affirmance of the sanctions order against Clarke.

## A. The Court's "Inherent Power to Sanction"

A court's inherent powers are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity. *Eichelberger*, 582 S.W.2d at 398. In *Kutch*, the

Corpus Christi appellate court expounded upon this power, stating as follows:

> Texas Courts have the inherent power to sanction for abuse of the judicial process which may not be covered by rule or statute. This power includes the power to sanction appropriately for failure to comply with a valid court order incident to one of the core functions of the judiciary.

831 S.W.2d at 510. Relying on an opinion from the Court of Criminal Appeals, the *Kutch* court identified the following as "core functions of the judiciary": hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment and enforcing that judgment. *Id.* (citing *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239–40 (Tex.Crim.App.1990)). Recognizing the inherent power to sanction is necessarily limited, the *Kutch* court concluded that the power exists only to the extent necessary to "deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts." *Id.*; *N.R.C.*, 94 S.W.3d at 810 n. 7 (noting the inherent power to sanction exists "only" to the extent necessary to deter, alleviate and counteract bad faith litigation practices); *Toles v. Toles*, 45 S.W.3d 252, 266–67 (Tex. App.-Dallas 2001, pet. denied). Also acknowledging the "amorphous nature" of the power and its potency, the court stated it should be used sparingly. *Kutch*, 831 S.W.2d at 510. Consequently, courts have

---

**2.** Ironically, the circumstances of this case aptly demonstrate the indispensability of restraints on the trial court's inherent power to sanction. Because, against the backdrop of multiple settings and appearances inherent in the practice of law generally, attorneys in family law cases represent, advise, and seek to achieve the goals of clients who are often governed by powerful, sometimes overwhelming, emotions. Securing their cooperation with motion and trial settings can be difficult. In most cases, attorneys are able to effectively counsel their clients to ensure full participation, but there are those times when a client will be completely uncooperative despite the attorney's best efforts. In those cases, as in this case, the attorney should not be sanctioned for conduct attributable solely to an unpredictable and irrational client.

determined that there must be some evidence in the record that the conduct complained of significantly interfered with the court's exercise of one of its core functions to uphold a sanction imposed under this inherent power. *Kennedy,* 125 S.W.3d at 19; *McWhorter v. Sheller,* 993 S.W.2d 781, 789 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Kutch,* 831 S.W.2d at 510.[3]

### 1. Standard of review

We review a trial court's order imposing sanctions under an abuse of discretion standard. *Phillips & Akers, P.C. v. Cornwell,* 927 S.W.2d 276, 279 (Tex.App.-Houston [1st Dist.] 1996, no writ); *see Trans-American Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). A failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

The findings of fact made by a trial court to support its sanction order are not to be treated on appeal as findings made under Texas Rule of Civil Procedure 296, which are reviewed for legal and factual sufficiency. *Mills v. Ghilain,* 68 S.W.3d 141, 145 (Tex.App.-Corpus Christi 2001, no pet.) (citing *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 442 (Tex. 1997)); *see also Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992) (concluding in death penalty sanctions case that findings are helpful, but such findings must be tied to the appropriate legal standard and supported by the record). Rather, findings filed by the trial court following an imposition of sanctions are utilized only to assist us in deciding whether the trial court abused its discretion. *Mills,* 68 S.W.3d at 145. We review the entire record in making our determination. *Id.*

In this case, the trial court abused its discretion by sanctioning Clarke because there is no evidence in the record that by failing to attend the mediation, Clarke engaged in bad faith litigation practices nor evidence that this conduct significantly interfered in any way with the court's exercise of its core functions.[4] *See, e.g., Chrysler Corp.,* 841 S.W.2d at 852–53 (concluding there was no evidence to support

---

3. Although the majority cites to *Kutch* as authority for its statement that the failure to attend the mediation constitutes significant interference with the court's core functions, a close reading of *Kutch* reveals this reliance is misplaced. The *Kutch* court did in fact state that a "[v]iolation of a court order relating to the court's management and administration of a particular legal claim generally will be a significant interference" with the judiciary's functions, but did so only after a prudent discussion of the necessity to use the power cautiously. 831 S.W.2d at 510–12. The majority overlooks this important aspect of the *Kutch* opinion by concluding that a violation of a court order is significant interference. Moreover, as noted later in this dissent, I do not disagree that the violation of a court order may be a sufficient basis for sanctions under the court's inherent power. An exercise of that power, however, requires evidence in the record that any violation significantly interfered with the court's core functions. *Id.* at 510.

4. The majority states that Clarke does not challenge the trial court's determination that the sanctioned conduct constituted bad faith litigation practices; however, we are to construe the briefs liberally. *See* Tex.R.App. P. 38.9. Clarke states in her issue that there is no evidence the conduct sanctioned significantly interfered with the court's core functions, but her argument asserts that there was no bad faith abuse of the judicial process. Accordingly, Clarke's appellate argument includes the assertion that failing to attend the mediation was not bad faith abuse of the judicial process. Moreover, the law regarding the inherent power to sanction does not support the majority's narrowing of Clarke's appellate argument. *See generally Kutch,* 831 S.W.2d at 510 (noting inherent power to sanction exists to the extent necessary to deter or alleviate bad faith abuse of the judicial process, *"such as"* significant interference with the court's core functions).

death penalty sanction); *Kennedy*, 125 S.W.3d at 19 (concluding there was no evidence in the record to support the court's sanctions order); *Kings Park*, 101 S.W.3d at 541 (stating the court's sanctions must be supported by some evidence of significant interference with core functions); *see also N.R.C.*, 94 S.W.3d at 810 n. 7 (concluding that failure to pay ad litem fee was not sufficient bad faith abuse of the judicial process to justify the sanction). For this reason, sanctions against Clarke are improper and the court's order imposing them should be reversed.

### 2. *Failure to attend the mediation*

As noted, the trial court concluded that by "[u]nilaterally canceling the court-ordered mediation without adequate notice," Clarke engaged in bad faith litigation practices. The evidence in the record regarding the mediation reflects the parties had scheduled it for Monday, March 31, 2003. In Clarke's affidavit attached to her motion for new trial, she averred that on March 24, 2003, Edwin J. Terry, Kenneth's ex-wife's attorney, telephoned her and stated that although he had learned Kenneth was considering non-suiting his case, Terry's client, Lisa, still wanted to mediate. Clarke replied that she had not been in touch with Kenneth, but would contact him. On March 28, Lisa filed her counter-petition to modify, requesting Kenneth's access to and possession of K.A.R. be conditioned upon Kenneth's continued participation in family counseling. Prior to March 28, Clarke's attempts to contact Kenneth had been unsuccessful, but she spoke with him on that date and during their conversation Kenneth told Clarke he was reluctant to attend the mediation. Clarke's affidavit states she explained the importance of attending the mediation to Kenneth and the two agreed to speak about the matter again over the weekend. She also advised Kenneth not to nonsuit his case, and discussed Lisa's counter-petition with him.

Two days later, on Sunday, March 30, when Clarke again spoke with Kenneth, he adamantly refused to attend the mediation. Clarke attempted to notify Terry of Kenneth's refusal to attend by faxing a letter to his office and, as noted by the majority, Terry's legal assistant received the faxed letter at 12:04 p.m. that afternoon. The letter also advised Terry that Kenneth was non-suiting his petition. In addition to contacting Terry, Clarke left messages with the mediator and McCumber, K.A.R.'s ad litem, stating that she and Kenneth would not be attending the mediation.

From this evidence, the majority concludes that "under the applicable standard of review," it is legally sufficient evidence to "support the trial court's determination that Kenneth and Clarke unilaterally canceled and failed to attend a court-ordered mediation without adequate notice."[5] But

5. Notably, the majority cites only one case in which a court concluded that failing to attend a mediation was sanctionable conduct. *See Roberts v. Rose*, 37 S.W.3d 31, 33 (Tex.App.-San Antonio 2000, no pet.). *See* 37 S.W.3d 31, 33 (Tex.App.-San Antonio 2000, no pet.). *See* 37 S.W.3d 31, 33 (Tex.App.-San Antonio 2000, no pet.). *Roberts*, however, is distinguishable. In that case, the attorney did not inform the client the mediation had been scheduled, nor did he inform opposing counsel of his intention to be absent from the mediation. *Id.* at 33. The trial court sanc- tioned the attorney for failing to appear at the mediation, failing to notify the parties of their intent to miss the mediation, and failing to attend the sanctions hearing. *Id.* The facts in this case are not so egregious as those in *Roberts*. Here, Clarke did not hide the intent to miss the mediation from the others involved nor simply let the appointment pass; rather, as soon as she was aware of Kenneth's refusal to attend, which unfortunately occurred on a Sunday morning, she attempted to notify everyone concerned. These key facts

here, the trial court merely stated conclusorily that the various actions constituted bad faith litigation practices and Kenneth and Clarke were responsible for those actions. In its review, the majority affirms the trial court's order merely relying on the fact that Clarke did not appear at the mediation as ordered and, as stated by the majority, failing to offer any explanation or excuse for her failure to attend "notwithstanding her client's refusal to do so." Under the majority's analysis, the fact an attorney failed to attend a mediation is the extent of the "evidence" necessary to support a sanctions order.

The record evidence reflects, however, that as soon as Clarke was aware of Kenneth's unequivocal refusal to attend, she attempted to notify those involved with the mediation. Although she was unable to directly contact each party, that fact is nothing more than a timing issue—she learned of Kenneth's refusal to attend on a Sunday. And, Terry did in fact receive notice that Clarke and Kenneth would not be attending the mediation. This conduct can hardly be said to constitute evidence of bad faith litigation practices. Further, Clarke's affidavit reflects that she advised Kenneth on the importance of attending the mediation, but he refused to attend nonetheless. An attorney can do nothing more in such a situation except withdraw from the representation. Clarke filed her motion to withdraw on Tuesday, April 1, the day after the scheduled mediation.

The majority attempts to strengthen its analysis by discussing Clarke's failure to attend the mediation as if it were a subversion of the judicial process, describing the conduct as a "usurpation" of the trial court's role. Regardless of the majority's overstatement, the fact remains the conduct sanctioned was Kenneth's and Clarke's failure to attend the mediation, and there is no evidence that this failure significantly interfered with the trial court's core functions. Indeed, the trial in this case was set to begin only a few days after the scheduled mediation and, typically, a trial is set on the court's docket months before the scheduled mediation; therefore, it is doubtful that missing the mediation could have significantly interfered with the trial court's functions. Moreover, the record is devoid of any changes to the trial court's docket necessitated by the failure to attend the mediation. Without some evidence of *how* the complained of conduct interfered with the court's exercise of its core functions, a reviewing court is forced to speculate as to the basis for the court's decision to impose sanctions.[6] *See Toles,* 45 S.W.3d at 267.

---

are absent from *Roberts. Id.* Indeed, many of the cases upholding sanctions orders have done so based on serious abuses of the judicial process, not under the circumstances existing here. *See, e.g., Bennett,* 960 S.W.2d at 40 (upholding sanctions order because counsel admitted participating in "filing scheme" to ensure adjudication by a particular judge, stating "[t]his type of conduct, if tolerated, breeds disrespect for and threatens the integrity of our judicial system."); *Kings Park,* 101 S.W.3d at 541 (concluding sanctions under inherent power was authorized based on allegations a paralegal was instructed to steal documents from the chambers of the special trial judge); *see also Kennedy,* 125 S.W.3d at 19 (noting that there was no evidence that refusing to sign a check significantly interfered with the trial court's core functions); *N.R.C.,* 94 S.W.3d at 810 n. 7 (concluding that failure to pay ad litem fee was not sufficient bad faith abuse of the judicial process to justify the sanction).

6. Also, we may not infer a finding that the complained-of conduct significantly interfered with the trial court's core functions because omitted findings can only be inferred when evidence supports those findings. *See* Tex.R. Civ. P. 299; *Black v. Dallas County Child Welfare Unit,* 835 S.W.2d 626, 631 n. 10 (Tex. 1992). Here, there is no evidence to support the conclusion that Clarke's failing to attend the mediation was a bad faith litigation prac-

And, although sanctions may be levied in part because of the disobedience of a court order, without evidence that the disobedience significantly interfered with the trial court's core functions, we should reverse sanctions imposed under the trial court's inherent power. *See id.*[7]

Further, the majority's characterization of this dissent as condoning the "usurpation of the court's role and the failure to comply with the court's order" is simply unfounded. The need for attorneys to comply with valid court orders cannot be questioned. Nonetheless, the law also requires restraints in the use of the trial court's inherent power to sanction. Namely, that a trial court's sanctions order imposed under its inherent power must be supported by some evidence of significant interference with its core functions. *See Kings Park*, 101 S.W.3d at 541. To conclude that there is no evidence that Clarke's violation of the mediation order significantly interfered with the trial court's exercise of a core function is not an endorsement of Clarke's violation of the mediation order; rather it is a recognition of the limits that Texas law sets on the use of the inherent power to sanction. *See Onstad v. Wright*, 54 S.W.3d 799, 809–10 (Tex.App.-Texarkana 2001, pet. denied) ("A sanction for failure to obey a court order must always be appropriate to the circumstances of the case.").

The inherent power to sanction is also limited by the fact the sanctions must be just and appropriate. *Shook*, 851 S.W.2d at 892; *Kutch*, 831 S.W.2d at 510. The "just and appropriate" standard requires the sanctions correlate to the sanctionable conduct and that the sanctions not be excessive. *Shook*, 851 S.W.2d at 892. These requirements reflect a need to balance the court's administration of justice, and the preservation of its integrity and independence, with the rights of litigants. *See id.* at 891. To conclude, as the majority suggests, that the violation of a court order is a per se significant interference, ignores these safeguards surrounding use of the inherent power and expands it unnecessarily.[8] In an appropriate case, failing to attend a mediation could rise to the level of significant interference with a trial court's core functions. Here, however, there is simply nothing in the record to show how missing the mediation significantly interfered with the court's core functions. Accepting, as the majority suggests, the violation of a court order as per se significant interference with the court's core functions is contrary to established precedent. *See McWhorter*, 993 S.W.2d at 789.

The majority also remarks that the trial court's sanctions order is bolstered by the fact Clarke became aware of Kenneth's desire to miss the mediation earlier in the

tice, nor that it significantly interfered with the court's core functions. Hence, although we are permitted to uphold a judgment if the conclusions of law contain errors, a judgment must be supported by sufficient evidence and findings of fact. *Black*, 835 S.W.2d at 631 n. 10.

7. In *Toles*, a divorce action, the husband moved for sanctions against his former wife and her attorney, alleging a laundry list of actions subject to sanctions, including violation of court orders relating to discovery and production of evidence, appearing late for depositions, and concealing evidence. 45

S.W.3d 252, 266 (Tex.App.-Dallas 2001, pet. denied). The Dallas Court of Appeals reversed the sanctions order citing a lack of evidentiary support in the record that the wife's conduct significantly interfered with the trial court's core functions. *Id.* at 267.

8. I agree with the majority's characterization of Kenneth's conduct as sanctionable because he decided at the last minute to be absent from the mediation, however, sanctions against Clarke are not warranted under these facts.

week; however, this assertion is not supported by the record. Clarke's affidavit states that Kenneth commented about his *reluctance* to attend on *Friday,* but the two agreed to discuss it further over the weekend. Clarke also stated she became aware of Kenneth's unequivocal refusal to attend the mediation on Sunday, the same day she contacted Terry's office. Moreover, Clarke was under an ethical obligation not to disclose her client's initial reluctance regarding the pending mediation because such a disclosure, particularly in a family law case, could be used offensively against Kenneth either in trial or in the mediation.

In discussing options available to Clarke, the majority suggests that Clarke could have attended the mediation without Kenneth. Although it is true that Clarke made a conscious decision to be absent from the mediation, it is also true that her attendance without Kenneth would have been futile. She could not agree to any settlement without her client's authorization. An integral aspect of mediation is the presence of the parties and, while perhaps not the most compelling ground to miss the mediation, Clarke had no reason to be present once Kenneth refused to attend. Moreover, whether we should affirm the trial court's order imposing sanctions is dependent on the evidentiary support for the order in the record, not on feasible options available to the party sanctioned.

In sum, the violation of a court order should not be per se sanctionable conduct, as concluded by the majority; record evidence must support the court's order. *See Toles,* 45 S.W.3d at 267. Considering the entire record, there is no evidence that Clarke's conduct in failing to attend the mediation significantly interfered with the trial court's core functions such that it rose to the level of a bad faith abuse of the judicial process. *See McWhorter,* 993 S.W.2d at 789 (reversing sanctions against attorney based on legally insufficient evidence of significant interference with court's exercise of its core functions); *Kutch,* 831 S.W.2d at 510.

### B. Other Sanctionable Conduct

Briefly, regarding Kenneth's failure to attend the court-ordered psychological evaluation, it is questionable that sanctioning Clarke for Kenneth's conduct meets the "just and appropriate" requirement for imposing sanctions. The blame for Kenneth's conduct and accompanying sanction must fall squarely with Kenneth alone rather than jointly with Clarke. The record evidences that Kenneth was emotionally fragile, and the very best Clarke, or any attorney, could do would be to sternly advise the client to complete the evaluation. But, an attorney cannot force the client to complete the evaluation. Under these circumstances, sanctioning Clarke for her client's decision is not "just" because it holds her responsible for the client's willful and independent behavior. Even if Kenneth's failure to complete his evaluation significantly interfered with the trial court's core functions and there was evidence of this in the record, there is no evidence Clarke was responsible for his failure.

In conclusion, the evidence in this case does not show that Clarke's conduct significantly interfered with the trial court's exercise of its core functions.

For the foregoing reasons, I would reverse the trial court's sanctions order as applied to Clarke.