Robert McWHORTER,
et al., Appellant,

v.

David L. SHELLER, Appellee.

No. 14–96–00875–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 6, 1999.

Patricia C. Hibler, William E. Ryan, Houston, for appellants.

Amy R. Shugart, David L. Sheller, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, FOWLER, and DRAUGHN.*

* Senior Justice Joe L. Draughn sitting by as-

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

This action was brought by David L. Sheller ("Sheller") against Robert McWhorter ("McWhorter") for negligence, misrepresentation, fraud, and civil conspiracy. Following a non-jury trial, the court entered judgment against McWhorter, awarding Sheller damages in the amount of $65,380.00. McWhorter assigns four points of error, challenging the sufficiency of the evidence to support the trial court's judgment. McWhorter also argues that the trial court erred in imposing sanctions against his attorneys because of the lack of any evidence of bad faith conduct. We affirm in part and reverse and vacate in part.

## I. BACKGROUND

McWhorter is a licensed attorney in Texas and possesses a federal firearms license. Sheller is also a licensed attorney in Texas. Sheller desired to invest in the firearms business. Thus, Sheller gave David Beavers and Jeff Provost, agents of McWhorter, $65,380 to purchase firearms to be sold at gun shows. Many of the firearms purchased with Sheller's money were subsequently sold at a gun show in December 1993, held at the Houston Astrohall. Several of Sheller's firearms remained unsold, however. Sheller contacted McWhorter about his investment. Sheller claimed that McWhorter told him there was nothing to worry about and that Beavers and Provost were doing an accounting and inventory on the firearms. However, Beavers and Provost subsequently transferred the remaining firearms to another firearms licensee. No firearms were returned to Sheller, nor was he compensated for the sale of any of the firearms. Sheller filed this action against McWhorter, Beavers, and Provost. Beavers and Provost were dismissed from the suit because Sheller was unable to obtain service of process.

signment.

## II. Discussion[1]

In his second point of error, McWhorter contends that the trial court erred in rendering a judgment in favor of Sheller because there was no finding by the trial court that McWhorter "borrowed" money from Sheller.

■ A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). In reviewing a "no evidence" point of error, a reviewing court may consider only the evidence and inferences that tend to support challenged findings and will disregard all evidence and inferences to the contrary. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). If there is more than a scintilla of evidence to support the findings, the "no evidence" challenge cannot be sustained. *Catalina,* 881 S.W.2d at 297.

■ The trial court found that "BEAVERS and PROVOST and MCWHORTER through them enticed $65,380 from SHELLER, on MCWHORTER's behalf." McWhorter avers that the "trial court's finding that money was 'enticed' from SHELLER ... does not support the inference that money was borrowed, or that there was a contractually binding obligation to repay the money." McWhorter suggests in his brief that if he merely "enticed" the money from Sheller, as opposed to "borrowing" the money, then he was not obligated to repay Sheller. He further contends that without a specific finding that he "borrowed" money from Sheller, the judgment of the trial court cannot be upheld on a contract theory. McWhorter asserts that even if a contract was found to exist, that the judgment against him should be reversed because a

contract with a 75% return rate, as promised to Sheller, would be "illegal and unenforceable" because of its usurious interest rate. McWhorter cites no authority to support his contentions.

■ The trial court in this case refused to find that McWhorter "borrowed" the money from Sheller because it expressly found that McWhorter, *inter alia,* defrauded Sheller to secure his financial investment in McWhorter's business of selling firearms. The elements of actionable fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury. *Holmes v. P.K. Pipe & Tubing, Inc.,* 856 S.W.2d 530, 541 (Tex.App.-Houston [1 st Dist.] 1993, no writ). The "measure of damages in a fraud case is the actual amount of the plaintiff's loss that directly and proximately results from the defendant's fraudulent conduct." *Tilton v. Marshall,* 925 S.W.2d 672, 680 (Tex.1996); *see also Holmes,* 856 S.W.2d at 543. The trial court awarded Sheller $65,380.00, the actual amount of Sheller's loss due to McWhorter's fraudulent conduct. *See id.*

The trial court's finding that McWhorter defrauded Sheller is supported by the evidence contained in the record presented for our review. *See Wal–Mart Stores, Inc.,* 968 S.W.2d at 936. It was not necessary for the trial court to find that McWhorter "borrowed" money from Sheller in order to enter a judgment in Sheller's favor. McWhorter's second point is overruled.

---

1. In McWhorter's first point of error, entitled "Issue Number One," he argues that his challenges to the trial court's findings are preserved for appellate review. We agree and conclude that McWhorter's points of error are

preserved for appellate review. *See Regan v. Lee,* 879 S.W.2d 133, 136 (Tex.App.-Houston [14 th Dist.] 1994, no writ); *Westech Eng. v. Clearwater Constructors,* 835 S.W.2d 190, 196–97 (Tex.App.-Austin 1992, no writ).

In his third point of error, McWhorter contends the trial court erred by entering contradictory findings of fact. McWhorter complains that the trial court's findings that he acted both negligently and intentionally are contradictory and therefore the judgment should be reversed. He also complains that the trial court's findings and conclusions do not support the trial court's judgment that he acted both negligently and intentionally.

In its findings of fact and conclusions of law, the trial court expressly found that McWhorter committed fraud, engaged in a civil conspiracy to defraud Sheller, and made negligent representations to Sheller to secure his financial investment in McWhorter's firearms business. The trial court's written findings of fact and conclusions of law, while inartfully drafted, support the trial court's judgment. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Luna v. Southern Pacific Transp. Co.*, 724 S.W.2d 383, 384 (Tex.1987) (court of appeals under a duty to harmonize findings whenever possible). Further, assuming *arguendo* that the trial court's findings are contradictory, McWhorter fails to develop in his brief how this error, if any, caused the rendition of an improper judgment. "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment." TEX.R.APP. P. 44.1(a)(1) (West 1999). We are unable to reach such a conclusion in this case. McWhorter's third point is overruled.

In his fourth point of error, McWhorter contends that the trial court erred in finding that fraud or misrepresentation occurred in this case because there was no evidence to show that Beavers and Provost possessed apparent authority to borrow or solicit money on his behalf. McWhorter asserts that the evidence is legally insufficient to support such a finding. When reviewing a legal sufficiency point, this Court "must consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences." *Wal–Mart Stores, Inc.*, 968 S.W.2d at 936.

While actual authority is created by written or spoken words or conduct by the principal to the agent, apparent authority is created by written or spoken words or conduct by the principal to a third party. *El Estillero v. J.S. McManus Produce*, 964 S.W.2d 332, 334 (Tex.App.-Corpus Christi 1998, no pet.); *see also Baptist Memorial Hosp. System v. Sampson*, 969 S.W.2d 945, 949 (Tex.1998). To establish apparent authority, one must show a principal either knowingly permitted an agent to hold itself out as having authority or showed a lack of ordinary care in order to clothe the agent with indicia of authority. *Id.* A court may consider only the conduct of the principal leading a third party to believe the agent has authority in determining whether an agent has apparent authority. *Id.* A party seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal which would lead a reasonably prudent person to believe the agent has the authority it purports to exercise. *Id.; see also Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex.1981). The principal must have affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Id.*

Here, the record shows that McWhorter allowed Beavers and Provost to use McWhorter's non-transferrable federal firearms license to buy and sell firearms for profit. McWhorter testified that Beavers and Provost were his agents. McWhorter knew that Sheller gave $65,380.00 to Beavers and Provost to buy firearms for the purpose of selling them at gun shows. McWhorter never told Sheller that his agents were acting outside their agency relationship with him. When Shel-

ler did not receive any return on his investment, he contacted McWhorter. McWhorter told Sheller that his agents were conducting an accounting, which led Sheller to believe that they were still operating within the scope of their authority. McWhorter further ratified his agents' conduct by accepting Sheller's financial investment and profiting therefrom.

■■■■ Ratification is the affirmance by a person of a prior act which when performed did not bind him, but which was professedly done on his account, whereby the act is given effect as if originally authorized by him. *Disney Enterprises, Inc. v. Esprit Finance, Inc.,* 981 S.W.2d 25, 31 (Tex.App.-San Antonio 1998, no pet.) (citing RESTATEMENT (SECOND) OF AGENCY § 82 (1958)). Ratification, in this context, is not a form of authorization, but a legal concept in agency law describing the relations between parties after affirmance by a person of a transaction done or purported to be done for him. *Id.* A ratification will lie when the individual for whom an act was done retains the benefits of the transaction after acquiring full knowledge of the transaction. *Id.; see also Land Title Co. of Dallas v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980). Most case law interpreting the doctrine of ratification couches its discussion in the context of an existing agency relationship where the agent exceeds the scope of her authority and the principal later accepts the benefits of such act after acquiring full knowledge. *Id.; Humble Nat'l Bank v. DCV, Inc.,* 933 S.W.2d 224, 237 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Ratification, however, can occur outside this general paradigm. *Id.* While most cases will fall within the context of an agency relationship, such a relation is not necessary to cause the ratification to be effective. *Id.* It is true, however, that because ratification is not a form of authorization, the ratification of an act of a stranger will not create an agency relationship, it will only bind the ratifier to the specific transaction

that is ratified. *Disney Enterprises, Inc.,* 981 S.W.2d at 31.

The trial court's findings that McWhorter's respective agents possessed apparent authority and that McWhorter ratified their fraudulent conduct is supported by the record. *See Wal–Mart Stores, Inc.,* 968 S.W.2d at 936. McWhorter's fourth point is overruled.

■■■ In his fifth point of error, McWhorter contends that the evidence is legally and factually insufficient to show that he agreed to enter into a conspiracy with Beavers and Provost to defraud Sheller. As previously noted, when reviewing a legal sufficiency point, we consider only the evidence and inferences tending to support the trial court's finding and disregard all contrary evidence and inferences. *Wal–Mart Stores, Inc.,* 968 S.W.2d at 936. On the other hand, in reviewing the factual sufficiency of the evidence, we consider all of the evidence in the record, not just the evidence which supports the judgment. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). We may set aside a judgment only if it is so contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust. *Id.* at 407. An appellate court may not pass upon the credibility of witnesses nor the weight to be accorded their testimony. The fact finder may accept or reject any witnesses' testimony in whole or in part. *See id.; see also Bocquet v. Herring,* 972 S.W.2d 19, 22 (Tex.1998) (Baker, J., dissenting). If the appellate court affirms the judgment, it not necessary for the court to detail all the evidence supporting the judgment. *See Maritime Overseas Corp.,* 971 S.W.2d at 407.

■■■■ An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Operation Rescue–National v. Planned Parenthood of Houston,* 975 S.W.2d 546, 553 (Tex.1998). The essential elements are (1) two or more persons

agreed on, (2) an object to be accomplished, (3) a meeting of minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Id.; Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 926 (Tex.1979). Once a civil conspiracy is proven, each conspirator is responsible for the acts done by any other conspirator to further the conspiracy. *Carroll,* 592 S.W.2d at 926. Further, "the common purpose from which conspiracy liability arises may be established by reasonable inferences." *Id.*

■■■ McWhorter argues that there was no direct evidence of any agreement between him and Beavers and Provost to defraud Sheller. He contends that he authorized his agents to only buy and sell firearms and that he met Sheller only after Sheller gave his money to Beavers and Provost. Sheller testified that Beavers and Provost took him to McWhorter's law office before making his investment. The record shows that McWhorter was present at the gun show where the firearms were displayed and sold and that he conveyed to Sheller that he was aware that his agents purchased firearms with Sheller's money. McWhorter's federal firearms license was used to purchase firearms with Sheller's money and the license was displayed and used at the gun show. After the gun show, McWhorter told Sheller that his agents were conducting an accounting and that the unsold firearms would be stored by McWhorter until being returned for credit. No firearms or money were ever returned to Sheller. McWhorter received a profit from the firearms purchased and sold with Sheller's money.

We conclude that the evidence was legally and factually sufficient to show that McWhorter entered into a conspiracy with Beavers and Provost to defraud Sheller. *See Maritime Overseas Corp.,* 971 S.W.2d

at 406–07; *Wal–Mart Stores, Inc.,* 968 S.W.2d at 936. The trial court's conspiracy finding is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* McWhorter's fifth point is overruled.

■■■ In his sixth point of error, McWhorter contends that the trial court erred in imposing sanctions against his attorney. He argues that the sanctions are unwarranted because his attorney did not act in bad faith and did not interfere with the administration of justice.

The trial judge initiated a telephone conference with both parties' respective counsel to communicate her findings of fact and conclusions of law so that an appropriate order could be prepared. Unbeknownst to the trial judge and Sheller's counsel, McWhorter's counsel recorded the telephone conference.[2] Upon being apprised of the tape-recording by McWhorter's counsel, Sheller's counsel moved for sanctions against McWhorter's counsel and her law firm. The trial court entered an order which imposed sanctions in the sum of $500.00 against counsel, her law partner and their law firm and an additional $500.00 for attorney's fees.

■■■ The decision to impose a sanction is left to the discretion of the trial court and will be set aside only upon a showing of abuse of discretion. *Onwuteaka v. Gill,* 908 S.W.2d 276 (Tex.App.-Houston [1st Dist.] 1995, no writ). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or whether under the circumstances of the case the trial court's action was arbitrary or unreasonable. *Id.* Texas courts have previously held courts have inherent power to discipline an attorney's behavior. *See, e.g., Lawrence v. Kohl,* 853 S.W.2d 697, 700 (Tex.App.-Houston [1st Dist.] 1993, no writ) (holding that trial

**2.** Disciplinary Rule 8.04(a)(3) prohibits an attorney from electronically recording a telephone conversation with another party without first informing that party that the conversation is being recorded. *See* Tex. Disciplinary R. Prof. Conduct 8.04(a)(3) (1989).

courts have the power to sanction parties for bad faith abuse of the judicial process not covered by rule or statute); *Kutch v. Del Mar College,* 831 S.W.2d 506, 509–10 (Tex.App.-Corpus Christi 1992, no writ).

The trial judge did not make a finding that McWhorter's attorney acted in bad faith in tape recording her instructions. McWhorter's counsel contended that she recorded the conversation so that the order to be prepared would accurately reflect the instructions given by the judge. There is no evidence that McWhorter's attorney acted in a manner which would interfere with the administration of justice or detract from the trial court's dignity and integrity. Indeed, the trial judge noted that the findings of fact and conclusions of law prepared from the recording tracked the telephone conference. The trial judge also noted that the findings were specific and that she felt comfortable adopting them.

We note that the trial court's inherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts. *Kutch,* 831 S.W.2d at 510. Accordingly, for inherent power to apply, there must be some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of these powers. *See id.* In the instant case, no such finding was made and we find no evidence indicating bad faith by McWhorter's attorney. The attorney's recording of the telephone conference, at best, represents some degree of inexperience and negligence on her part, rather than an intentional act made in bad faith. We also observe that an Ethics Opinion concerning an attorney's obligation to inform all parties before tape recording a conversation was published during the same month as this recording occurred. *See* 59 TEXAS BAR JOURNAL 181 (Ethics Opinion 514) (Feb.1996). We emphasize that Ethics Opinion 514 is a legally binding part of Rule 8.04(a)(3), *supra,* and is applicable to all attorneys licensed in this state. Accordingly, should such a recording occur in the future without informing all parties and securing the permission of the trial judge, sanctions against the recording attorney may be appropriate. For the reasons previously stated, we find that the trial court abused its discretion in imposing sanctions in this case. McWhorter's fifth point is sustained.

We reverse and vacate the trial court's judgment concerning the imposition of sanctions of $500 and attorney's fees of $500. In all other respects the trial court's judgment is affirmed.