Affirmed and Memorandum Opinion filed October 21, 2008








Affirmed and Memorandum Opinion filed October 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00204-CV

____________

 

THE TRAVIS LAW FIRM, A PROFESSIONAL
CORPORATION,
Appellant

 

V.

 

WOODSON WHOLESALE, INC., Appellee

 



 

On Appeal from the County
Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 858496

 



 

M E M O R A N D U M   O P I N I O N

A law firm appeals the trial court=s award of damages
and attorney=s fees in the law firm=s favor in its
suit against a lumber company alleging legal and factual insufficiency of the
evidence supporting the amount of each award.  We affirm.

 

 

 








I.  Factual and Procedural Background

Appellant The Travis Law Firm (the AFirm@) hired attorney
Sandra Jacobson in January 2005 to serve as an independent contractor in its
office.  The Firm paid Jacobson an hourly wage for work she performed for the
Firm=s clients.  In
addition, the Firm permitted Jacobson to perform legal work for her own
clients.  Jacobson kept this work separate from the work she performed on the
Firm=s behalf.  As part
of this arrangement with the Firm, she billed her own clients and sent invoices
on her own letterhead without input from the Firm. 

Jacobson=s separate work included work for appellee
Woodson Wholesale, Inc. (AWoodson@), a lumber
company for whom Jacobson had provided legal counsel for nearly ten years. 
Over the course of their working relationship, Jacobson sent Woodson invoices
for legal services, and Woodson paid Jacobson directly. 

On March 1, 2005, Jacobson became a full time, salaried
employee with the Firm.  Jacobson and the Firm agreed to a fee-splitting
arrangement under which Jacobson earned fifty percent of the fees for legal
work she performed for the Firm for her own clients like Woodson.  As a
full-time employee of the Firm, Jacobson performed legal work for Woodson from
March 2005 through May 2005.  In March 2005, Jacobson provided an invoice to
Woodson for work she performed between January 2005 and March 2005, when
Jacobson was an independent contractor for the Firm.  The invoice reflected the
Firm=s office address
and Jacobson=s personal email address at the Firm; however, the
invoice contained a statement indicating that payment should be sent to a post
office box.  The Firm had no input in how Jacobson billed Woodson, nor did the
Firm voice any objections to the payment procedure for this particular
invoice.  Generally, the Firm allowed each individual attorney to handle
invoices for the Firm=s clients and allowed attorneys to
discount fees charged for some clients before an invoice was sent.  Woodson
paid this invoice directly to Jacobson.








In June 2005, the Firm terminated Jacobson.  On June 30,
2005, the Firm sent Woodson a letter on Firm letterhead seeking payment of
three enclosed invoices totaling $4,125 for work Jacobson performed between
March 2005 and May 2005.  The record reflects that Woodson was aware of
Jacobson=s termination by
the time Woodson received the invoices.  However, Jacobson sent an email to
Woodson and instructed Woodson to pay her directly using Jacobson=s tax
identification number.  Jacobson indicated that she would pay the Firm Afor all sums due
[to the Firm] under our agreement and will provide you a receipt from the
[Firm] clearing their bill.@  Woodson paid Jacobson with a check for
the total amount of the invoices.  In mid-September, Jacobson sent the Firm a
check for $4098.75 and indicated on the memo line that $1,762.50 was earmarked
for Woodson=s account with the remaining amount apportioned
between two other client accounts.  Jacobson testified that after reviewing the
documents regarding the three invoices, she decided that some of the time
should have been written off, resulting in a $600 write-off.  Jacobson
testified that she paid the Firm $1,762.50 because that amount was half of the
amount due on these invoices after subtracting $600.  








At the end of September 2005, the Firm sent Jacobson a
letter that stated, AWe received a check from you today in the
amount of $4,098.75 and it appears this is for payment on three different invoices
sent directly to your clients from our firm.@  The Firm sent a
letter, dated November 1, 2005, to Woodson indicating that Apartial payment
was apparently made to Ms. Jacobson@ and that even A[t]hough Ms.
Jacobson forwarded payment to this firm, your account is still owing in the
amount of $600.00.@  In that letter, the Firm indicated that
payments should be made directly to the Firm and not to Jacobson.  On appeal,
the Firm contends that the amount of $600, as noted in this letter, was an
accounting error.  The Firm sent another letter to Woodson in December 2005
stating, AWe have contacted you on several occasions regarding
your past due amount of $4,125.00 to no avail.  Please pay this amount directly
and immediately to this firm.@  Woodson did not pay the amount and
litigation ensued.  

The Firm brought suit against Woodson for breach of
contract and sought to recover the balance allegedly due on a sworn account,
among other things.  Additionally, the Firm sought reasonable attorney=s fees of more
than $50,000 for expending 130 hours of attorney time in pursuing collection of
the amounts allegedly owed by Woodson.  

In a bench trial, Woodson presented defenses of payment,
ratification, and estoppel.  After hearing and reviewing all of the evidence,
the trial court rendered judgment that the Firm recover from Woodson $600 on
the claim, plus $1,500 for trial court attorney=s fees,
prejudgment interest, postjudgment interest, and court costs.  The trial court
filed findings of fact and conclusions of law.

                                                      II.  Issues

On appeal, the Firm asserts that the evidence is legally
and factually insufficient to support the trial court=s award of $600 in
damages.  The Firm also argues that the evidence is legally and factually
insufficient to support the amount of attorney=s fees awarded by
the trial court.  

                                        III. 
Standards of Review

When reviewing
the legal sufficiency of the evidence, we consider the evidence in the light
most favorable to the challenged finding and indulge every reasonable inference
that would support it.  City of Keller v. Wilson, 168 S.W.3d 802,
823 (Tex. 2005).  We must credit favorable evidence if a reasonable factfinder
could and disregard contrary evidence unless a reasonable factfinder could not.
 See id. at 827.  We must determine whether the evidence at trial would
enable reasonable and fair-minded people to find the facts at issue.  See
id.  The factfinder is the only judge of witness credibility and the weight
to give to testimony.  See id. at 819.








When
reviewing a challenge to the factual sufficiency of the evidence, we examine
the entire record, considering both the evidence in favor of, and contrary to,
the challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside the fact finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).  The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  GTE Mobilnet of S.
Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own judgment for that of the trier of fact,
even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61 S.W.3d at 616.  Because findings
of fact in a bench trial have the same force and dignity as a jury verdict, we
review them for legal and factual sufficiency of the evidence under the same
standards we apply in reviewing a jury=s findings.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  We independently evaluate the
trial court=s conclusions of law and will uphold them if the trial
court=s judgment can be
sustained on any theory supported by the evidence.  See Marsh v. Marsh,
949 S.W.2d 734, 739 (Tex. App.CHouston [14th Dist.] 1997, no pet.).

IV.  Analysis

A.      Is the
damages award supported by legally and factually sufficient evidence?

Gregory Travis, on behalf of the Firm, sent a letter to
Woodson, dated November 1, 2005, in which he stated in pertinent part as
follows:








Although partial payment was apparently made to Ms.
Jacobson, rather than to this Firm, your obligation to pay [the Firm] is not
excused.  Though Ms. Jacobson forwarded payment to this Firm, your account is
still owing in the amount of $600.00.  I would appreciate your paying this
amount immediately and directly to this Firm.  Any payments to Ms. Jacobson,
who is no longer associated to [sic] this Firm, will not be credited and we
will continue to seek recovery.  Please note, it was not appropriate to have
any monies paid directly to Ms. Jacobson for our invoices.

The
record also reflects that, in September 2005, the Firm cashed a check from
Jacobson with a notation on it that $1,762.50 was for AWoodson.@  Travis, on
behalf of the Firm, sent a letter to Jacobson in September 2005.  In this
letter, the Firm acknowledged receipt of Jacobson=s check, stated
that it appeared the check was for payment as to three of her clients= outstanding
invoices, and asked Jacobson if her clients had paid her directly instead of
paying the Firm.  

Under the applicable standards of review, the evidence is legally and factually
sufficient to support a finding that the Firm and Jacobson had agreed that
each was entitled to half of the fees collected on the invoices totaling
$4,125, regardless of when the fees were collected.  Treating the $1,762.50 the
Firm received from Jacobson as the Firm=s half of the fees
Woodson paid to Jacobson would mean that Woodson would have paid $3,525 and
still owed the Firm $600.  Though the trial record contains conflicting
evidence, under the applicable standard of review, the evidence  would enable reasonable
and fair-minded people to find that the Firm ratified Jacobson=s payment to the
Firm of $1,762.50 as being payment by Woodson to the Firm of $3,525 of the
$4,125 principal amount owed by Woodson,  resulting in a remaining principal
balance of $600.  See McWhorter v. Sheller, 993 S.W.2d 781, 787 (Tex.
App.CHouston [14th
Dist.] 1999, pet. denied).  Under the applicable standard of review, such a finding would not be so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Legally and factually sufficient evidence supports this ratification
theory.  Therefore, the trial court correctly concluded that Woodson discharged
its obligation
to pay the Firm for legal services, except as to the amount of $600 that is
still due and owing.  See id.








On appeal, the Firm asserts that, to have awarded $600, the
trial court would have to have made the following assumptions that are not
supported by the evidence:  (1) Jacobson was an agent of the Firm; (2) Jacobson
could accept payment from Woodson for fees billed by the Firm; and (3) Woodson
can take credit for Jacobson=s payment to the Firm.  However, the trial
court did not need to make these assumptions or find any of these matter in
order to determine that the Firm ratified Jacobson=s payment to the
Firm of $1,762.50 as being payment by Woodson to the Firm of $3,525 of the
$4,125 principal amount owed by Woodson, resulting in a remaining principal
balance of $600.  

As to ratification, the Firm asserts that the record
contains no evidence that it approved or had full knowledge of the transaction
in which Jacobson instructed Woodson to pay her $4,125 and Woodson paid
Jacobson this amount.  However, full knowledge of these matters is not
necessary to have full knowledge of Jacobson=s payment to the
Firm of $1,762.50 regarding the Woodson account and to ratify this payment as a
payment by Woodson to the Firm of $3,525 of the $4,125 principal amount owed by
Woodson, resulting in a remaining principal balance of $600.[1]


Because legally and factually sufficient evidence supports the trial court=s conclusion that the principal
amount owed by Woodson to the Firm is $600, we overrule the Firm=s first issue.  

B.      Is the award of attorney=s fees supported by legally and
factually sufficient evidence?

In its second issue, the Firm challenges the legal and
factual sufficiency of the evidence supporting the trial court=s award of
reasonable attorney=s fees at the trial level of $1,500.  At
trial, Travis testified as follows:

!       Though the Firm is representing itself in
this litigation, every hour it spends on this case is an hour the Firm is
losing that could have been spent on another case.








!       The Firm=s normal, standard billing rate is $350 per hour.

!       The Firm=s attorneys have worked 130.2 hours on this case.

!       A reasonable and necessary attorney=s fee for preparing this case and
representing the Firm through judgment in the trial court is $50,887.89.

!       This case had Aunusual needs@ because of a grievance filed by Woodson against the Firm,
several hearings in the trial court, the need to respond to a motion to
transfer venue and a motion for summary judgment, and  the Firm=s filing of a motion for summary
judgment.

!       Travis does not believe that Woodson ever
sent the Firm any discovery requests in this case. 

!       Neither the
Firm nor Woodson has taken any depositions in this case.

Counsel for Woodson testified that the fees sought by the
Firm are unreasonable but did not state what fee would be reasonable.  The
record reflects that the trial in this case lasted three hours.  The Firm
sought to recover a principal amount of $4,125 but recovered the principal
amount of $600.  The Firm asserts that it presented uncontroverted testimony
that a reasonable and necessary fee through judgment in the trial court is
$45,570, thereby conclusively proving that this amount is reasonable and
necessary.  The Firm actually presented testimony that a reasonable and
necessary attorney=s fee for preparing this case and
representing the Firm through judgment in the trial court is $50,887.89. 
Presuming that this testimony was not contradicted by any other witness, it was
contradicted by attendant circumstances, such as the fact that the fee sought
by the Firm was more than 84 times the principal amount the Firm recovered. 
Therefore, the Firm did not conclusively prove the amount of reasonable and
necessary trial court fees.  See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex.
1990); Inwood N. Homeowners= Ass=n, Inc. v. Wilkes, 813 S.W.2d 156,
157B58 (Tex. App.CHouston [14th
Dist.] 1991, no writ).








Based on the record and under the applicable standards of
review, we conclude the evidence is both legally and factually sufficient to
support the trial court=s finding that $1,500 is a reasonable attorney=s fee through the
trial court level for this lawsuit, a simple collection action resulting in the
recovery of a principal amount of $600.  See id. (affirming award of
attorney=s fee of $500
through the trial court level for the collection of a $694.44 obligation). 
Accordingly, we overrule the Firm=s second issue.

Having overruled all of the Firm=s points on
appeal, we affirm the trial court=s judgment.

 

 

 

 

/s/      Kem Thompson
Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed October 21, 2008.

Panel
consists of Justices Frost, Seymore, and Brown.

 









[1]  In addition, we need not address the Firm=s arguments regarding the trial court=s quasi-estoppel findings because we are not affirming
the trial court=s judgment based on quasi-estoppel.