# NO. 12-13-00228-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *OCEAN CARRIERS, INC. AND MRS. MARIA PEARCY, AS INDEPENDENT EXECUTRIX OF THE ESTATE OF JAMES O. PEARCY, APPELLANTS* | *§* | *APPEAL FROM THE 402ND* |
| | *§* | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *TEAM OCEAN SERVICES, INC., APPELLEE* | *§* | *WOOD COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Ocean Carriers, Inc. (OCI) and Mrs. Maria Pearcy, as independent executrix of the estate of James O. Pearcy,[1] appeal the trial court's judgment awarding Team Ocean Services, Inc. (TOS) $252,300.00 in actual damages and $250,000.00 in exemplary damages for fraud. Appellants raise four issues on appeal. We affirm.

## BACKGROUND

TOS and OCI are intermediaries in the ocean shipping business. A shipping intermediary contracts with a customer who needs cargo shipped and makes arrangements with a carrier, either directly or through another intermediary, to transport the customer's cargo. TOS and OCI first began their business relationship in 2008 when their respective presidents, Randy Honeycutt and James O. Pearcy, worked together on an ill-fated Dominican Republic shipment. After this initial cooperative effort, Honeycutt invited Pearcy to TOS's 2008 annual meeting to meet TOS's

---

[1] James O. Pearcy died in January 2011. Thereafter, the representative of Pearcy's estate was added as a defendant.

American and international agents. Thereafter, Pearcy was invited to TOS's corporate headquarters in Winnsboro, Texas, to discuss potential joint business ventures.

On June 5, 2009, TOS and OCI signed a contract of affreightment for the transport of silica sand, frac sand, specialized gravel, and rock pellets in bulk (the silica sand shipment) from Mobile, Alabama, to China. Pursuant to the contract, OCI chartered a ship with Gypsum Transportation.[2]

In late July 2009, OCI sent four invoices to TOS totaling $252,300.00. It sent these invoices at the behest of Paul Powell, an international manager in TOS's Dallas office. These invoices, which Pearcy prepared based upon the detailed instructions Powell gave him, set forth the following information:

Invoice #1102

| | |
|---|---|
| Date: | July 23, 2009 |
| Job: | Machinery NOS via barge |
| From: | Catoosa, OK |
| To: | Houston, TX |
| Shipper: | Born Inc. (Tulsa, OK) |
| Amount: | $65,000.00 |

Invoice #1103

| | |
|---|---|
| Date: | July 23, 2009 |
| Job: | Machinery NOS via barge |
| From: | Houston, TX |
| To: | Tuxpan, Mexico |
| Shipper: | Born Inc. (Tulsa, OK) |
| Amount: | $85,000.00 |

Invoice #1104

| | |
|---|---|
| Date: | July 27, 2009 |
| Job: | 30,000 MT shipment |
| From: | Port McKenzie, AK |
| To: | Shanghai, China |
| Shipper: | Sovereign Transport Service (Houston, TX) |
| Amount: | $50,000.00 |

---

[2] Under TOS's standard procedure, Honeycutt was to review and sign off on all contracts of affreightment. But the evidence at trial indicated that he was not informed of this contract with OCI until September 2009.

Date:           July 27, 2009
Job:            40,000 MT shipment
From:           Houston, TX
To:             Xiaman, China
Shipper:        AlpiUSA
Amount:         $52,300.00

In response to the invoices, TOS paid OCI $252,300.00. Pearcy, on behalf of OCI, applied the $252.300.00 to the silica sand shipment.

On September 8, 2009, Honeycutt learned of the silica sand contract. During the next two days, he met with Pearcy and Powell and learned that the four invoices were fictitious. As a result, TOS terminated Powell. Honeycutt later demanded that Pearcy return the $252,300.00 OCI received. Pearcy promised in writing to remit the entire amount, but OCI never returned the money.

Following Powell's termination by TOS, Pearcy continued to work with Powell. During this time, they engaged in a similar scheme with a company called AlpiUSA.

On April 16, 2010, TOS filed the instant suit against OCI and Pearcy for damages based on fraud, negligent misrepresentation, breach of contract, and money had and received. Following a bench trial, the trial court found for TOS on each of its causes of action and awarded it $252,300.00 in actual damages and $250,000.00 in exemplary damages. TOS elected to recover damages under its fraud remedy. This appeal followed.[3]

---

[3] At oral argument before this court, Appellants stated they were limiting their appeal to their fourth issue challenging the trial court's award of exemplary damages based on a lack of clear and convincing evidence of fraud. We have considered the arguments raised by Appellants in their first and second issues inasmuch as they relate to whether there is legally and factually sufficient evidence that they committed fraud. However, we do not consider their third issue pertaining to collateral estoppel. Appellants raised the issue of collateral estoppel in a motion for directed verdict following TOS's presentation of evidence, but did not, after they presented their case, reurge their motion. Accordingly, Appellants waived their motion for directed verdict and failed to preserve the issue of collateral estoppel for appeal. *See* ***Ratsavong v. Menevilay***, 176 S.W.3d 661, 667 (Tex. App.–El Paso 2005, pet. denied) (defendant who moves for directed verdict after plaintiff rests, but thereafter elects not to stand on his motion and proceeds with his own case, waives motion for directed verdict unless motion is reurged at close of case).

In their fourth issue, Appellants argue that there is insufficient evidence to support the trial court's award of exemplary damages because there is not clear and convincing evidence that they committed fraud.

**Standard of Review**

The Texas Civil Practice and Remedies Code requires a plaintiff seeking to recover exemplary damages resulting from fraud to establish the elements of fraud by clear and convincing evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1) (West Supp. 2013). "Fraud" means fraud other than constructive fraud. *See id.* § 41.001(6) (West 2008). "Clear and convincing" evidence equates to "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 41.001(2).

Whenever the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). In a legal sufficiency review, the court should look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Looking at the evidence in the light most favorable to the finding means that a reviewing court must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id*. But the court must not disregard undisputed facts that do not support the finding. *See id*.

When reviewing the factual sufficiency of the evidence, a court of appeals must consider and weigh all of the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In a factual sufficiency review, the court must give due consideration to evidence that the fact finder reasonably could have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, the court should consider whether disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id*. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact

4

finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

When, as here, findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984).

## Fraud

To prevail on its fraud claim, TOS was required to prove that (1) OCI and Pearcy made a material representation that was false; (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) they intended to induce TOS to act upon the representation; (4) TOS actually and justifiably relied upon the representation; and (5) TOS suffered injury as a result. *See Ernst & Young v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). A conspiracy to defraud on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose. *Schlumberger Well Sur. Corp. v. Nortex Oil & Gas Corp*., 435 S.W.2d 854, 857 (Tex. 1968). Each conspirator is responsible for the acts done by any other conspirator to further the conspiracy. *McWhorter v. Sheller*, 993 S.W.2d 781, 788 (Tex. App.–Houston [14th Dist.] 1999, pet. denied). The common purpose from which conspiracy liability arises may be established by reasonable inferences. *Id*.

## Discussion

In the instant case, the record reflects that Powell dictated the information to be set forth in the invoices to Pearcy, who, through OCI, forwarded them to the TOS corporate office. The evidence further indicates that all of the representations in these four invoices numbered 1102, 1103, 1104, and 1105 were fictitious. That is, the shipments described in the invoices did not exist. Sending a false invoice, in and of itself, can be a material misrepresentation. *See Daugherty v. Jacobs*, 187 S.W.3d 607, 617 (Tex. App.–Houston [14th Dist.] 2006, no pet.).

Appellants argue that Powell told Pearcy what information to put in these invoices and, therefore, Pearcy did not knowingly make any misrepresentations, but rather, merely followed Powell's instructions. Yet the record is undisputed that Pearcy, upon receiving the $252,300.00 from TOS, applied it to the unauthorized silica sand shipment rather than to the jobs listed in the

four invoices. Thus, the trial court reasonably could infer from Pearcy's action that he knew the four invoices were fictitious when he sent them to TOS and intended to divert the $252,300.00 to the silica sand shipment from the outset.

Appellants further contend that there was no evidence that they would not have gone forward with the four shipments set forth in the invoices if TOS had tendered the cargo for shipment. But the only reasonable inference to be made from Pearcy's applying the $252,300.00 to the silica sand shipment was that he knew the money would not be needed for those four shipments because they were a complete fabrication.

The record further supports that TOS actually and justifiably relied upon the representation. Specifically, the evidence indicates that the invoices appeared to be valid. Thus, the trial court reasonably could infer that Pearcy and Powell had knowledge of how these types of invoices were paid by TOS's corporate office and produced invoices they knew would be paid by TOS as matter of course. Lastly, TOS suffered injury because it paid $252,300.00 for shipments that were never intended to be undertaken.

In sum, based on our review of the record, the trial court reasonably could have determined that Pearcy and Powell acted in concert with one another to cause TOS to pay OCI the $252,300.00 due on the fictitious invoices. The evidence indicates that Pearcy applied this money to the silica sand shipment, which Honeycutt never authorized. Thus, we conclude that the trial court could make the implied finding that Powell and Pearcy conspired to defraud TOS of $252,300.00 and that they both knowingly made a material misrepresentation. Accordingly, we hold there is clear and convincing evidence to support the trial court's implied finding that OCI and Pearcy committed fraud.

We next consider whether the evidence is factually sufficient to support the trial court's fraud finding. Appellants argue that that the overwhelming weight of the evidence demonstrates that OCI and Pearcy followed Powell's instructions in issuing the four invoices, and OCI would have performed the shipments if TOS had tendered the cargo for shipment. Appellants further argue that "OCI and Pearcy did not make a successful living in the shipping business for 40 years by making promises they didn't intend to keep[.]" We have considered the entirety of the record and weighed all of the evidence. Having done so, we conclude that the trial court's fraud finding is not so contrary to the clear and convincing evidence to be clearly wrong and unjust.

6

We hold that the trial court did not err in awarding exemplary damages based on an alleged absence of clear and convincing evidence supporting the element of fraud. Appellants' fourth issue is overruled.

## DISPOSITION

Having overruled Appellants' fourth issue,[4] we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[4] *See* n.3.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

MAY 30, 2014

NO. 12-13-00228-CV

**OCEAN CARRIERS, INC. AND MRS. MARIA PEARCY,**
**AS INDEPENDENT EXECUTRIX OF THE ESTATE OF JAMES O. PEARCY,**
Appellants
V.
**TEAM OCEAN SERVICES, INC.,**
Appellee

Appeal from the 402nd District Court

of Wood County, Texas (Tr.Ct.No. 2010-252)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all things **affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **OCEAN CARRIERS, INC. AND MRS. MARIA PEARCY, AS INDEPENDENT EXECUTRIX OF THE ESTATE OF JAMES O. PEARCY**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*