# NO. 12-08-00253-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 321ST* |
| *C.G.C. AND Z.K.C.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *SMITH COUNTY, TEXAS* |

## MEMORANDUM OPINION

Julie Suzanne Carnes appeals from the trial court's final order in a suit affecting the parent-child relationship and divorce action. On appeal, Julie presents four issues. We reverse and remand.

## BACKGROUND

On February 23, 2007, Donna Jean Braly and Robert R. Carnes filed a first amended original petition in a suit affecting the parent-child relationship and a request for temporary orders. The petition stated that Donna and Robert are the paternal grandparents of C.G.C. and Z.K.C., minor children, and requested that they be appointed managing conservators of the minor children. According to the petition, an order was necessary because the minor children's present environment presented a serious question concerning their physical health or welfare. Donna and Robert also requested that the parents of the children, Julie Suzanne Carnes and Walter Lee Carnes, be ordered to undergo drug testing. Attached to the petition was an affidavit by Donna, stating that the children had been staying with her since January 2007 at the direction of Child Protective Services, that she "believe[d]" Julie and Walter had used drugs in the recent past, and that, recently, a Smith County Sheriff's deputy went to Julie and Walter's home and found drug residue. Donna stated that her son was "satisfied" with placing the children with her, but that Julie had threatened to run away with the children. Further, she asserted that returning the minor children to Julie's home would be injurious to their physical and emotional health.

On February 28, 2007, the parents, Julie and Walter, agreed to temporary orders appointing Donna and Robert as temporary joint managing conservators of the minor children. The trial court signed temporary orders, finding that the material allegations in Donna and Robert's petition were true and that these orders were in the best interest of the children. The trial court appointed Donna and Robert temporary joint managing conservators of C.G.C. and Z.K.C., with Donna having the exclusive right to designate the primary residence of the children. Julie and Walter were allowed supervised visitation on alternate weekends and were ordered to pay support to Donna. On March 2, 2007, the trial court filed a scheduling order, ordering a full day of mediation.

On March 20, 2007, Julie filed a cross petition for divorce against Walter, requesting that she be appointed sole managing conservator of C.G.C. and Z.K.C., and that she be awarded a disproportionate share of the marital estate. Walter filed a pro se response, asking that the children continue to live with Donna, that Julie receive only supervised visitation, and that they both pay child support to Donna. On June 15, Donna and Robert filed a motion to compel mediation because their attorney and Julie's attorney could not agree on a mediator or a date for mediation. At a hearing on the motion, Donna and Robert's attorney stated that Julie's attorney did not agree to any of the mediators he suggested. Julie's attorney stated that Julie did not have a "lot of money," so he had been attempting to find a mediator "who won't charge so much." Counsel for both parties agreed on a mediator during the hearing. Further, the trial court ordered that Julie's substance abuse problem be evaluated by Dwayne M. Cox, a licensed chemical dependency counselor. On September 26, 2007, Cox filed a chemical dependency assessment of Julie.

On January 29, 2008, the trial court filed a new scheduling order, stating that the pretrial conference would be held on March 19, 2008, and that the final trial would be held on March 25, 2008. On March 12, 2008, Julie's attorney cancelled the mediation scheduled for March 17, stating that Julie was indigent and could not afford to pay for it. On the same day, Donna and Robert filed a motion to strike Julie's pleadings, stating as grounds that Julie violated the pretrial orders by unilaterally cancelling mediation. On March 18, Julie filed a motion to waive mediation, asserting that she was unable to pay for the costs of mediation and attaching an affidavit of indigency to the motion.

At the pretrial hearing on March 19, the trial court declined to waive mediation, and the following exchange occurred between the trial court, Julie's attorney, and Donna and Robert's attorney:

JULIE'S ATTORNEY:  Judge, my client can't afford the mediation.

TRIAL COURT:  I'm sorry.

JULIE'S ATTORNEY:  She doesn't have the money.

TRIAL COURT:  Are you fighting over custody?

. . . .

JULIE'S ATTORNEY:  Yes, Your Honor.

TRIAL COURT:  Okay.  Then there will be no trials without mediation.

. . . .

JULIE'S ATTORNEY:  She owes me $3,000 now.

. . . .

JULIE'S ATTORNEY:  Judge, I don't want my client to be prejudiced because I'm helping her for nothing.

TRIAL COURT:  Well, I'm sorry, but you got to go to mediation.

JULIE'S ATTORNEY:  She can't --

DONNA AND ROBERT 'S ATTORNEY:  Assuming we –

JULIE'S ATTORNEY: -- afford it.

. . . .

TRIAL COURT:  Well, then go back in that room and settle it.

. . . .

TRIAL COURT:  How did y'all do?

JULIE'S ATTORNEY:  We want to go to settlement week.

TRIAL COURT:  Well, it won't be until September.

. . . .

JULIE'S ATTORNEY:  Is there some other program comparable to that?

TRIAL COURT: No. . . . I sent y'all in July to [a mediator], and nobody told me there was no money.

. . . .

JULIE'S ATTORNEY: The reason we didn't go in July is because my client didn't have the money.

TRIAL COURT: Well, you didn't tell me.

JULIE'S ATTORNEY: Yes, I did.

TRIAL COURT: You did not file anything that said you couldn't afford it.

JULIE'S ATTORNEY: I didn't file anything, but I stood right here and told you she needed some time to raise the money for the mediation.

TRIAL COURT: All right. . . . You have to file something. You could have gone to settlement week. Y'all didn't go.

JULIE'S ATTORNEY: I didn't even –

TRIAL COURT: I'll strike your pleadings.

JULIE'S ATTORNEY: --know about settlement week.

On March 20, the trial court found that Julie failed to comply with a prior order of the court to participate in mediation, ordered that Julie's affirmative pleadings on file be stricken, and ordered that Julie not be permitted to call witnesses or put on evidence in the case.

At the final hearing on March 25, 2008, the trial court reiterated that, until the pretrial hearing, no one complained about mediation or costs of mediation or asked to change mediators. Julie's attorney stated that he had informed the trial court about his client's lack of money to pay for mediation on at least two prior occasions. Further, he asserted that the trial court was allowing Donna and Robert to use their money to violate Julie's civil rights. However, the trial court refused to continue the case on the date of trial or vacate its order striking Julie's pleadings. After the final hearing, Julie made a bill of exception, testifying that she attempted to borrow money to pay for mediation, but could not do so. She stated that she did not have any property to mortgage to raise the money and that she owed more money on her car than it was worth.

On March 31, 2008, the trial court filed a final order in the case, granting the divorce, and dividing the personal property and debts between the parties. The trial court ordered that

1. Donna, Robert, Julie, and Walter be appointed joint managing conservators of C.G.C. and Z.K.C., with Donna having the exclusive right to designate the primary residence of the children without regard to geographic location.

4

2. The standard possession order should not apply in this case.

3. Julie has increasing visitation with the minor children according to the visitation schedule attached to the order, leading to standard visitation as a possessory conservator effective June 1, 2008.

4. Walter has possession of the children at Kids Connection.

5. Both parents pay child support and, as additional child support, cash medical support to Donna.

In its findings of fact and conclusions of law, the trial court stated that

1. The parties dictated an agreement regarding the temporary orders into the record.

2. Pursuant to the parties' agreement, the parents of the minor children will have supervised visitation because of their history of drug use.

3. The court signed an order striking Julie's pleadings for her failure to attend mediation and participate in an evaluation by Cox.

4. "Due to the fact that [Julie] never went back to [Cox] as previously ordered by the court for a drug evaluation and did not attend mediation," the court struck her pleadings.

This appeal followed.

<u>STANDING</u>

As part of her second issue, Julie contends that Donna and Robert lacked standing to initiate a suit affecting the parent-child relationship.

**Applicable Law**

Standing is a constitutional prerequisite to maintaining a suit under Texas law.  ***Tex. Ass'n of Bus. v. Tex. Air Control Bd.***, 852 S.W.2d 440, 444 (Tex. 1993).  Standing, as a component of subject matter jurisdiction, cannot be waived and may be raised for the first time on appeal by the parties or the court.  ***Id.*** at 445-46.  When standing is challenged for the first time on appeal, appellate courts "must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing."  ***Id.*** at 446.

5

We review a challenge to a party's standing de novo. ***Tex. Dep't of Transp. v. City of Sunset Valley***, 146 S.W.3d 637, 646 (Tex. 2004). A grandparent may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development, or both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit. TEX. FAM. CODE ANN. § 102.004(a) (Vernon Supp. 2009).

The standard for determining whether the grandparent's proof is satisfactory is a preponderance of the evidence. ***Von Behren v. Von Behren***, 800 S.W.2d 919, 921 (Tex. App.–San Antonio 1990, writ denied). Further, section 102.004 does not specify when the consent must be given or whether the consent must be in writing. ***In re A.M.S.***, 277 S.W.3d 92, 98 (Tex. App.–Texarkana 2009, no pet.). Oral consent, given by the proper party and established in the record, is sufficient to grant standing under section 102.004 even if consent is given after the filing of the petition. ***Id.***

## Analysis

We must determine whether the grandparents, Donna and Robert, had standing to bring an original suit. *See* TEX. FAM. CODE ANN. § 102.004(a). First, we review whether there was satisfactory proof by a preponderance of the evidence that the minor children's present circumstances would significantly impair their physical health or emotional development. *See id.*; ***Von Behren***, 800 S.W.2d at 921. We construe the petition in favor of the grandparents, Donna and Robert, and review the entire record to determine if any evidence supports standing. *See **Tex. Ass'n of Bus.***, 852 S.W.2d at 446. In its temporary orders, the trial court found that the material allegations in the petition were true and that the orders were in the best interest of the children. Further, in its findings of fact and conclusions of law, the trial court found that the parents of the minor children had supervised visitation because of their history of drug use. Donna's affidavit asserted that the children had been staying with her since January 2007 at the direction of Child Protective Services, that she "believe[d]" Julie and Walter had used drugs in the recent past, and that, recently, a Smith County Sheriff's deputy went to Julie and Walter's home and found drug residue. Donna stated that her son was "satisfied" with placing the children with her, but that Julie had threatened to run away with the children. Further, she

6

asserted that returning the minor children to Julie's home would be injurious to their physical and emotional health.

Julie's chemical dependency assessment filed by Cox stated that she admitted using methamphetamines in a "binge fashion" that progressively worsened until December 2006. Both parents consented to drug testing and admitted attending drug after-care programs. From this evidence, the trial court could have determined that both parents used drugs in the recent past, had a history of drug use, were in drug after-care programs, and agreed to drug testing, that Julie used methamphetamine in a "binge fashion" through December of 2006, and that returning the minor children to Julie's home would be injurious to their physical and emotional health. Thus, there was a preponderance of evidence that the order was necessary because the children's present circumstances would significantly impair their physical health or emotional development. *See* TEX. FAM. CODE ANN. § 102.004(a); ***Von Behren***, 800 S.W.2d at 921.

Further, the grandparents have standing to file an original suit if both parents consented to the suit. *See* TEX. FAM. CODE ANN. § 102.004(a). At the hearing on temporary orders, both parents agreed, in open court and on the record, to the terms of the order dictated in open court and signed by the trial court. Consent to entering the temporary orders necessarily included consent to the filing of the suit. *See **In re A.M.S.***, 277 S.W.3d at 98. Further, oral consent, given by both parents and on the record, is sufficient to grant standing even if consent was given after the petition was filed. *See **id**.* Because both parents consented to the terms of the temporary orders appointing the grandparents, Donna and Robert, joint managing conservators of the minor children, the parents consented to the suit. *See* TEX. FAM. CODE ANN. § 102.004(a).

Because there was satisfactory proof to the trial court that the order requested was necessary because the children's present circumstances would significantly impair their physical health or emotional development, and because both parents consented to the suit, the grandparents had standing to file an original suit. *See **id**.* Accordingly, we overrule Julie's second issue.

### ORDER STRIKING PLEADINGS

In her first issue, Julie argues that the trial court erred by striking her affirmative pleadings because she was unable to pay for the costs of mediation.

7

**Applicable Law**

A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Id.* at 241-42.

A trial court possesses all inherent powers necessary for the enforcement of its lawful orders. *Wal-Mart Stores, Inc. v. Butler*, 41 S.W.3d 816, 817 (Tex. App.–Dallas 2001, no pet.). Further, a trial court has implicit power to sanction for failing to obey a pretrial order. *See* TEX. R. CIV. P. 166 (permitting trial courts to enter orders establishing agreements of the parties that control the subsequent course of the case up to trial); *Williams v. Akzo Nobel Chem., Inc.*, 999 S.W.2d 836, 842 (Tex. App.–Tyler 1999, no pet.). A trial court's core functions include the management of its docket and the issuance and enforcement of its orders. *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.–Houston [14th Dist.] 2005, no pet.). The trial court may issue orders and, when it deems appropriate, vacate, rescind, or modify those orders. *Id.* Lawyers and the litigants do not have such authority. *Id.* The failure to comply with a trial court's order to participate in mediation constitutes significant interference with the court's core functions and, therefore, can support an award of sanctions imposed under the court's inherent power to sanction. *Id.*

However, sanctions imposed pursuant to the court's inherent power must be just and appropriate. *In re Bledsoe*, 41 S.W.3d 807, 812 (Tex. App.–Fort Worth 2001, no pet.). A trial court abuses its discretion if the sanctions imposed are not just. *Id.* (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)). To determine whether sanctions are just, we apply a two prong test. *Williams*, 999 S.W.2d at 843. First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and must be visited upon the offender. *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. The trial court should attempt to determine if the offensive conduct is attributable to counsel only, or to the party only, or to both. *Id.*;

8

*Williams*, 999 S.W.2d at 843.  Second, the sanctions must not be excessive. ***TransAmerican Nat. Gas Corp.***, 811 S.W.2d at 917.  A trial court must consider the availability of lesser sanctions and whether such lesser sanctions would fully promote compliance.  ***Id***. Lesser sanctions must first be tested to determine whether they are adequate before a sanction that prevents a decision on the merits of a case can be justified.  ***Cire***, 134 S.W.3d at 840.  Case determinative sanctions may be imposed only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules.  ***GTE Communications Sys. Corp. v. Tanner***, 856 S.W.2d 725, 729 (Tex. 1993). However, the record must reflect that the court considered the availability of lesser sanctions before imposing death penalty sanctions.  ***Cire***, 134 S.W.3d at 840.  The trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed.  ***Id***.

## Analysis

In applying the first prong of the test to the facts presented here, we note that Julie's attorney cancelled the scheduled mediation before trial.  During the hearings, the trial court heard argument by counsel for both sides, but no evidence was presented.  The trial court stated that Julie's attorney failed to inform the court that she could not afford mediation, and failed to file pleadings stating that Julie could not pay for mediation. Further, the trial court pointed out that it sent the parties to a mediator in July of 2007 and that, until the date of the pretrial hearing in March of 2008, no one had informed the court that Julie did not have the money to pay for mediation.  However, the trial court did not sanction Julie's attorney for his omissions.  Instead, the court sanctioned Julie for not attending the mediation by striking her pleadings, and by not permitting her to call witnesses or put on evidence in the case.  Consequently, this sanction was not visited upon the offender, Julie's attorney. *See **TransAmerican Nat. Gas Corp.***, 811 S.W.2d at 917.  Further, this sanction did not remedy any prejudice caused to Donna and Robert when the mediation was cancelled, but served to avoid further delay. *See **id***.  Because the trial court sanctioned Julie for failing to attend the mediation and not her attorney for failing to timely inform the court that she could not afford mediation, there is no direct nexus among the offensive conduct, the offender, and the sanction imposed.  *See **Spohn Hosp.***, 104 S.W.3d at 882; ***TransAmerican Nat. Gas Corp.***, 811 S.W.2d at 917.  Thus, the first prong has not been met.

The second prong requires that the record reflect that the trial court considered the availability of lesser sanctions before imposing death penalty sanctions. *See **Cire***, 134 S.W.3d at

9

840. Striking a party's pleadings is a harsh sanction that must be used as a last resort after the trial court has considered lesser sanctions. *See id.* at 842. In all but the most egregious and exceptional cases, the trial court must test lesser sanctions before resorting to death penalty sanctions. *See id.* Here, the record does not reflect that the trial court considered or tested lesser sanctions. *See id.* at 840-42. The trial court's order to strike Julie's pleadings stated only that it was striking Julie's affirmative pleadings because she failed to comply with an order to participate in mediation. This order is insufficient to justify the severity of the sanctions imposed. *See Spohn Hosp.,* 104 S.W.3d at 883; *Williams*, 999 S.W.2d at 844.

The trial court's findings of fact and conclusions of law are, likewise, insufficient. The record does not support the trial court's finding that it based its order striking Julie's pleadings on her failure to participate in an evaluation by Cox. As noted above, Julie was assessed by Cox prior to the cancellation of the mediation. Further, the primary consideration in a trial court's decision in determining conservatorship and possession of and access to a child is the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.002 (Vernon 2008). We believe that only a most unusual set of facts would support determining conservatorship and possession of a child without reaching the merits of the case. *See In re Hood*, 113 S.W.3d 525, 529 (Tex. App.–Houston [1st Dist.] 2003, no pet.). Here, the facts in this case are not so extreme, egregious, or exceptional as to support the imposition of these sanctions without reaching the merits to consider the best interests of the minor children. *See id.*; *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993). Because the trial court did not consider or test lesser sanctions before imposing death penalty sanctions, the second prong has not been met. *See Cire*, 134 S.W.3d at 840.

Based on the foregoing, we conclude that the trial court's death penalty sanctions were not just and were an abuse of discretion. *See TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. Accordingly, we sustain Julie's first issue.

### CONCLUSION

Based on our review of the record, we have concluded that the grandparents had standing to file suit and have overruled Julie's second issue. However, we have sustained Julie's first issue. Therefore, we *reverse* the trial court's final order as to the issue of conservatorship and *remand* this cause to the trial court for further proceedings consistent with this opinion. In all

other respects, the order of the trial court is **affirmed**.[1]   Because Julie's first two issues are dispositive of her remaining issues, we do not address them.  *See* TEX. R. APP. P. 47.1.

**SAM GRIFFITH**
Justice

Opinion delivered January 29, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[1] The only affirmative pleading Julie filed was a cross petition for divorce.  However, it appears that the trial court granted Julie and Walter's divorce based on Walter's pro se response.  Moreover, the parties entered into an agreement regarding the division of community property.  Therefore, we conclude that the portion of the final order granting the divorce and dividing the community property should be affirmed.